## THE ATHENS MINING COMPANY

*v.*

## ANNIE CARNDUFF.

*Opinion filed April 17, 1906.*

1. MINES—*conscious violation of Mining act is willful.* A conscious failure to observe and comply with the provisions of the Mining act, even though no evil intent induces the failure, is a willful violation, and whether such violation was the proximate cause of the injury complained of is a question of fact for the jury.

2. SAME—*when instruction as to the defendant's violation of the statute "proximately contributing to" the injury is not erroneous.* An instruction authorizing a recovery if the defendant's willful violation of the Mining act "proximately contributed to" the injury is not erroneous, where the failure to properly inspect the mine for gas is the willful violation relied upon, and the evidence tends to show the injury was the result of an explosion of gas at the time a shot was fired.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding.

WINSLOW EVANS, and JAMES M. GRAHAM, for appellant.

OLIVER R. BARRETT, and JOHN A. BLOOMINGSTON, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was an action on the case brought under section 18 of chapter 93 (4 Starr & Cur. Stat. p. 857,) by the appellee, Annie Carnduff, against the appellant company for damages resulting to her from the death of her husband, who was killed by an explosion in the coal mine of appellant at Athens, Illinois.

The declaration originally consisted of four counts, but the action was dismissed as to the first and fourth counts and was submitted to a jury for trial on a plea of not guilty to

the second and third counts. Verdict and judgment in favor of the appellee for $1500 resulted. The judgment was affirmed by the Appellate Court for the Second District, and a further appeal has been perfected to this court.

The second count of the declaration charged a willful violation of paragraph (*a*) of section 18 of chapter 93, which requires the mine examiner to visit mines before the miners are permitted to enter, to inspect the places where the miners are expected to pass or work, and to observe whether there are any accumulations of gas or other unsafe conditions, etc. The third count charged a willful violation of paragraph (*b*) of section 18 of said statute, which provides that when it is discovered that accumulations of gas exist in a working place, the mine examiner shall place a conspicuous mark thereat, as a notice to all men to keep out, and immediately report his finding to the mine manager, and that no one shall be allowed to remain in any part of the mine through which gas is being carried into a ventilating current, or to enter the mine to work therein, except under the direction of the mine manager, until all conditions shall have been made safe. Paragraph (*c*) of section 18 of the statute requires a daily inspection of the mine to be made by the mine examiner.

There was a main entry in the mine from the bottom of the hoisting shaft extending a long distance eastward into the mine, and known as the main east entry. In going to the ninth and tenth south entries, where the accident occurred, the men descended the hoisting shaft and went some fifteen hundred feet along the main east entry to the ninth south entry. The miners working at the face of ninth south, when going there, proceeded directly down ninth south, while those who worked on the face of tenth south, left ninth south at the first passageway about two hundred and fifty feet south of main east, which led a short distance through the wall between ninth and tenth south to the last named entry. Off from ninth south to the west, and about two hundred feet

south of main east entry were two stub entries, known as first west and second west, and off of tenth south, and about as far south as second west, were two stub entries known as first east and second east. Air was forced down the air shaft and through the mine by machinery. The air current was forced from the air shaft down main east to ninth south where it turned down ninth south for some distance, entered first west, and from thence, by way of a cross-entry, entered second west, through which it was forced back into ninth south, down which it flowed one hundred and fifty or two hundred feet to a cross-cut, through which it was forced to enter tenth south, from whence it moved north along tenth south through second east and back to tenth south by way of first east, then by way of tenth south to and through main east until it entered an entry known as back east, and thence through other parts of the mine which it is not necessary to mention. The faces of ninth and tenth entries south were being carried on further to the south, and had been mined beyond the place where the rules or plan of the mine required another cross-cut. The work on this cross-cut had been begun at the same time from ninth south and from tenth south, and had proceeded from each direction until there was at the time of the accident but a few feet of coal to be mined to complete the cross-cut. Gas had been discovered towards the face of ninth south entry "beyond the air,"—that is, beyond the last open cross-cut through which the air current reached tenth south. Just south of said cross-cut some officer of the mine erected two iron bars from the sides of the entry and set a shovel resting bottom up, on which he wrote with chalk, "Gas—keep out," and the miners who were working on the face of ninth south and on the cross-cut from the face of ninth south were ordered to cease work there, but work was continued on the face of tenth south entry and on the cross-cut that was being made from that face to the ninth south entry. Carnduff, the deceased husband of the appellee, went to work in the mine on the night of Sunday, March 22, 1903.

Men worked in the mine that day but no examination of the mine was made, the last examination before the accident having been made on Saturday, March 21. On Monday morning, the 23d, at about the hour of ten o'clock A. M., Imkey, one of the miners working on the face of tenth south, where powder had been placed in the borings, tamped down and fuses inserted, "fired a shot," which was followed by a terrific explosion. Imkey was found dead in the ninth south entry directly opposite second east entry; another miner was found dead in ninth south entry, a short distance further north; in the second west entry another man was found dead; in ninth south entry between first west and main east entries two miners were found dead, one of whom was Carnduff; and in main east, a considerable distance to the west from ninth south, two more men were found, one dead and the other seriously burned. All of the bodies were found along the line traveled by the air current.

At the close of all the evidence the appellant asked the court to peremptorily instruct the jury to return a verdict of not guilty, which motion was refused, and the appellant excepted.

The contention of the appellant that the explosion was caused by excessive and "windy powder shots" has been finally determined adversely to appellant by the verdict of the jury and the opinion of the Appellate Court, as has also the contention that the failure of the examiner to make a "formal examination" of the mine on Sunday before the miners went into their work at night had nothing to do with the accident.

The conscious failure to observe and comply with the provisions of the Mine and Miners act, even though no evil intent induces the failure, is a willful violation, and whether the willful failure of the mine operator to comply with the terms of the act relative to inspection, etc., is the proximate cause of a personal injury is a question of fact for the jury. *Odin Coal Co.* v. *Denman,* 185 Ill. 413; *Missouri Malleable*

*Iron Co.* v. *Dillon,* 206 id. 145; *Kellyville Coal Co.* v. *Strine,* 217 id. 516.

It is urged by the appellant that there was no evidence fairly tending to show that the death of the deceased resulted from the explosion of gas. It is practically conceded that the appellant violated the statute, as alleged in the second and third counts of the declaration. The appellant company, through its representative, knew of the existence of gas near the south end of the ninth south entry on Saturday. It did not inspect the mine on Sunday or on Monday morning, and permitted men to go into the uninspected mine to work in near proximity to the gas accumulated in the ninth south entry. The evidence showed that gas in a mine is not in itself necessarily dangerous, but that it becomes dangerous when combined with certain proportions of air. If the gas is comparatively free from any admixture of air it will not explode, but if one part of gas is mixed with between nine and ten parts of air it becomes highly explosive, and is then termed by the miners as "wicked" or "vile" gas. It also appears that when the mine was examined on Saturday prior to the accident the gas was not "wicked" or "vile." Nevertheless the gas was there, and that it was present constituted some evidence tending to show that gas caused the explosion. Furthermore, the evidence tended to show sufficient time had elapsed between the time of the accident and the last examination of the mine for the gas to become impregnated with air and rendered explosive. It was also disclosed by the evidence that the force of a gas explosion is expended against the current of the air and that the force of a powder explosion follows the air current. Great damages and disturbances in the mine were caused by the explosion against the course of the current of the air. As stated hereinbefore, the bodies of all of the miners who were killed were found along the line of and directly against the current of air which was moving toward the situs of the explosion, and the evidence tended to show that only a gas explosion

could retain its force against the air to the place where the bodies of two of the men, one dead and the other severely burned, were found. There was therefore evidence fairly tending to show the appellee's theory that the death of her husband was caused by an explosion of gas. The motion to give the peremptory instruction was properly overruled.

It is next insisted that the trial court admitted improper evidence. Certain witnesses were allowed to testify to statements made to them a few days before the explosion by one Cooper, the appellant's mine examiner. The substance of the statements alleged to have been made by the examiner were, that if shots fired by the men at work in the tenth south entry at the cross-entry which was being cut towards ninth south entry should blow through into the gas at the face of the ninth south entry he would not like to be in the ninth south, because it would blow "them to hell." Mikson, a witness, testified to the conversation with Cooper, which was had on an idle day and while they were outside of the mine. This testimony the court afterwards excluded, and directed the jury, by an instruction, to disregard it, and the error in admitting it was thereby rendered harmless, as we think. The other alleged statements of the mine examiner, Cooper, were made in the mine and were testified to by the witnesses Harris and Rhodes. The Appellate Court, in its reference to the admission of this evidence, said: "Cooper was acting for the company and held an important position. His knowledge of the danger of the situation was the knowledge of the company. An employee was steadily at work in tenth south entry cutting a cross-cut towards the ninth, and driving into and exploding shots in the thin barrier of coal between the place where he was working and the part of that cross-cut already dug out on the side of the ninth south. He was liable to blow a shot through at any time into the end of the ninth south, where the mine examiner knew, and the other active managers of the mine generally knew, that there had been gas for over a week, sufficiently dangerous to cause de-

fendant to take the men out of the work in the ninth south. While it was not necessary to show defendant's knowledge of the condition resulting from the willful violation of the statute, yet we are of opinion that it was not harmful to defendant to show that three or four days before the accident defendant's fire boss and mine examiner knew that what was then being done in the tenth south was dangerous to the lives of the men in that part of the mine, especially in view of the very low damages awarded by the jury."

Next it is contended that the court erred in giving the first instruction asked on behalf of the appellee. The last clause of the instruction is the part complained of and is as follows: "And if the jury further find, from a preponderance of the evidence in the case, that the willful failure of the defendant, as alleged in the second or third counts of plaintiff's declaration, proximately contributed to the accident and injury therein complained of, then the plaintiff is entitled to recover." It is insisted that the court, by using the words "proximately contributed to" instead of "proximately caused,"—the words used in the statute,—committed reversible error. Instructions given at the request of the appellant company informed the jury that if Carnduff was killed by a powder explosion occurring in entry tenth south, and not by reason of a gas explosion in entry ninth south, the appellee could not recover. The instructions on that point were clear and concise. If the gas exploded, as the jury necessarily found it did, and caused Carnduff's death, the willful failure of the appellant to comply with the statute proximately contributed to and also caused the death of the husband of appellee. If the death of the deceased was not caused by a gas explosion, the appellant's instructions required a verdict for appellant. As applied to this case the instruction complained of was not incorrect.

We think the case was fairly presented to the jury, and find no error in this record of such gravity as to warrant the reversal of the judgment.

The motion of the appellee that damages be assessed in this court against the appellant company on the ground that the appeal was prosecuted for delay only, is denied.

The judgment of the Appellate Court must be and is affirmed.

*Judgment affirmed.*