### City of Chicago v. Harold O'Brien, by next friend.
#### Gen. No. 12,776.

1. PEREMPTORY INSTRUCTION—*what question raised by motion for.* A motion for a peremptory instruction raises the question as to whether there is any evidence which proves, or tends to prove, the issues, and each of them, which it is essential for the plaintiff to establish in order to recover.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. CHARLES A. BISHOP, Judge, presiding. Heard in this court at the October term, 1905. Reversed. Opinion filed October 8, 1906.

JOHN F. SMULSKI, for appellant; EDWARD C. FITCH and EDWARD S. DAY, of counsel.

CHARLES L. MAHONY, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Appellee was plaintiff and appellant defendant in the trial court, and appellee recovered judgment for the sum of $2,000 and costs, from which judgment this appeal is taken. The suit was commenced October 11, 1900, and November 14, 1900, appellee filed an amended declaration, averring as follows:

"The defendant before and on, to-wit, the 8th day of November, 1899, was possessed of and had control of a certain sidewalk on a certain public street called Wendell street, in said city and county aforesaid, and ought to have kept the same in good and safe repair and condition; yet defendant, not regarding its duty

in that behalf, and while it so had the control of said sidewalk on the south side of Wendell street, at a point twenty-five feet westerly of a certain other public highway called Franklin street, in the said city of Chicago, the said city having had reasonable time and opportunity, after having received knowledge of such unsafe condition, to have put the same in proper condition for use before and on the day aforesaid, there wrongfully and negligently and without reasonable diligence, suffered and permitted two iron doors to be laid in said sidewalk for the purpose of permitting the occupant of the premises adjoining the said sidewalk at the point aforesaid, to have ingress and egress to and from the basement of said premises, through a hole or excavation under the sidewalk, and suffered and permitted the said iron doors to be and remain open, leaving a large hole or excavation in said sidewalk, with no guards or barriers, so that persons lawfully using the said sidewalk might be reasonably safe from danger by reason of the said hole or excavation in said iron doors. By means whereof the plaintiff, who was then passing there, through, along and upon the said sidewalk, while in the exercise of all due care for his own safety, necessarily and unavoidably fell into the said hole or excavation in said sidewalk, and was thereby thrown and fell through the said hole in said sidewalk to and upon the ground there; and thereby the left elbow of the plaintiff was fractured and dislocated,'' etc.

Appellee's mother, Mrs. Anna Spahn, formerly Mrs. O'Brien, testified that October 10, 1904, appellee was eleven years of age, so that his age November 8, 1899, when the accident occurred, was about five years and one month.

The following description by appellant's counsel, of the premises where the accident occurred, is correct and admitted so to be by appellee's counsel:

''On the southwest corner of the intersection of Franklin and Wendell streets, at the time of the alleged injury, was a brick building used as a bakery and store, fronting on the west side of Franklin street,

the north side extending westward on the south side of Wendell street. The front consisted of a door with a show window on either side; and on the Wendell street side a show window about six feet wide met the north front window. Along the front of the store was a little iron platform or elevation with glass agates in it, six or seven inches high, and it extends also along Wendell street the width of the window. Right at the end of this elevation was an opening in the sidewalk leading to a space beneath, which formed an entrance to the basement of the building. This opening extended westward from the elevation about four and a half feet, and was about four feet wide. It was covered by two iron doors of about equal width. When opened, one door lay up against the wall of the building and the other lay flat on the sidewalk. When closed, these doors form part of the sidewalk. The width of the sidewalk is not stated, except that it was 'a wide sidewalk.' There was no railing or guard about these doors. The distance from the sidewalk to the floor of the basement was nine feet, and a ladder led from the west end of the opening to the floor. Farther back, toward the alley, was an opening or area way.''

There was another opening in the walk, into which coal was unloaded. The accident occurred about six o'clock in the evening of November 8, 1899, and the evidence tends to prove that it was dark or dusky at the time. Appellee and his sister, Kathleen, aged about eight years, had been playing around the described premises, when Kathleen started to her home, which was on the east side of Franklin street, three doors south of Wendell street. Appellee refused to go with her. Shortly thereafter she was returning to get him. He was standing on the elevation of the walk, at the west end of the Wendell street window looking at some cakes displayed in the window, and saw through the window that his sister was coming, and stepped back and fell into the opening, and down to the cement floor of the vault, and was injured. There is

no evidence that the opening was improperly or unsafely constructed, or that the doors or lids of it, which when down formed part of the sidewalk, were unsafe or insufficient. That the opening to the basement was constructed by the permission of the city is not questioned. There is nothing in the evidence to show, nor is it claimed, that the opening, when its doors or lids were down, rendered the sidewalk the least unsafe. Neither is it claimed that it was the duty of the city to cause a permanent railing or guard to be placed around the opening. The city was legally powerless to do so. The sidewalk is as much a part of the street as the roadway, and the doors of the opening, when closed, are a part of the street, and the effect of placing a permanent railing around the opening would be to deprive the public of the use of the enclosed part of the walk. While the city has ample power to prevent such an opening in the walk, the power is subject to the limitation that "the paramount right of the public to the full, free and safe use of the street, in all of its parts, shall not be infringed." West Chicago Masonic Ass'n v. Cohn, 192 Ill. 210, 214. The defect for which it is sought to hold the city liable, is the permitting the doors of the opening to remain open, and the opening unguarded, and it was incumbent on appellee to prove either that the city had actual notice or knowledge of this defect, or that it had existed for so long a time, next before the accident, that the city, in the exercise of ordinary care, would have known of it, and, therefore, must be presumed to have known of it. City of Chicago v. McCarthy, 75 Ill. 602. There is no evidence that the city had actual notice that the doors of the opening were left open on the day of the accident, or at any time, or as to how long they had been open next before the accident. Kathleen, appellee's sister, who saw appellee about the time he fell into the opening, testified that she did not notice that the doors were open before she saw appellee fall into

it; that she didn't observe the doors open that day, before that time. Appellee testified nothing as to how long the doors had been open before the accident, nor did any other witness. The appellee relies exclusively on testimony that on other days prior to the day of the accident the doors had been open, as sufficient to charge the city with knowledge, which testimony we will now refer to.

Kathleen O'Brien, who was eight years old at the time of the accident, testified that prior to November 8, 1899, she noticed the doors open three or four times a week; that during the school months the doors were open when she returned from school, which was about 3:30 or 3:45 P. M., and that they would remain open till about 5 or 5:30 P. M. On her cross-examination the court asked her, "When you were at home, were you always where you could see that door?" to which she answered, "Mostly all of the time, when we would be at the step. We lived on Franklin street and could see it, if something was delivered there." The last part of the answer is explained by the evidence for appellant that sugar and flour were delivered at the opening, for the use of a bakery which was in the basement.

Lulu Moore, who was about ten years of age at the time of the accident, testified that she went to the same school as Kathleen O'Brien, and that, while coming home from school, about 3:30 P. M., in the summer months, they would see the doors open, and that sometimes they would be open till dusk; at other times not so long, and that during the months of September and October, 1899, she saw them open three or four times a week.

The foregoing is substantially all the evidence relied on by appellee in support of the averment that the city had notice that November 8, 1899, the doors of the opening were open and the opening unguarded. We think this evidence insufficient to charge the city with notice that the doors were open and unguarded at the

time of the accident. The utmost that can be inferred from the evidence in favor of appellee is, that the city, if exercising ordinary diligence, would have known that at times prior to November 8, 1899, the doors of the opening were left open and unguarded, and, therefore, must be presumed to have so known. But this presumption can go no further, and cannot be the basis of the further presumption that November 8, 1899, the city knew that the doors were open and the opening unguarded. "The law is that a presumption cannot be based on a presumption." Globe Acc't Ins. Co. v. Gerisch, 163 Ill. 625.

Appellant's counsel, at the close of the evidence for the plaintiff and again at the close of all the evidence, moved the court to instruct the jury to find the defendant not guilty, and presented to the court with each motion an appropriate instruction. The court overruled the motions and refused the instructions. It is assigned as error that the court erred in overruling the motion made when all the evidence was in, and in refusing to give the instruction presented with the motion. There was no evidence tending to prove faulty construction of the opening in the walk, or in the doors to the opening, or the insufficiency of the doors when closed, as part of the walk, and, therefore, either actual knowledge of the city that the doors were open and the opening unguarded, at the time of the accident, or that they had been in that condition for such length of time next before the accident, that the city would be presumed to have had knowledge, was necessary to a recovery.

The motion made at the close of all the evidence operated as a demurrer to the evidence, and raised the question whether there was any evidence tending to prove such actual knowledge of the city, or on which to base the presumption of the city's knowledge. There was no such evidence, and the court erred in overruling the motion and refusing to give the in-

struction asked. In Frazer v. Howe, 106 Ill. 563, 573, the court say: "If there is no evidence before the jury on a material issue, in favor of the party holding the affirmative of that issue, on which the jury could, in the eye of the law, reasonably find in his favor, the court may exclude the evidence, or direct the jury to find against the party so holding the affirmative." This language has been approved in subsequent cases. In this case we hold that there is *no* evidence tending to prove an element essential to a recovery, the existence of which element it was incumbent on appellee to prove, and, therefore, it was the duty of the court to instruct the jury as requested by appellant.

Counsel for appellant discuss other questions in their argument; but in view of the conclusion above stated, we deem it unnecessary to consider them in this opinion.

Counsel for appellee cites City of Chicago v. Babcock, 143 Ill. 358, in support of his client's case. The facts in that case are not fully stated, doubtless because a full statement was unnecessary, in view of the ground on which the case was defended. The court say: "No claim is made that it was not negligent on the part of the city to permit the opening in the sidewalk, and to permit the trap-door to be left open; but it is urged that there was no right of recovery because appellee was not exercising ordinary care, and that it was, therefore, error for the trial court to refuse to instruct the jury to find the defendant not guilty." The court then proceeds to show that the evidence tended to prove that the appellee exercised ordinary care. We do not consider the case applicable, and besides, in West Chicago Masonic Ass'n v. Cohn, 192 Ill. 210, 214, a much later case, the court say: "But the city of Chicago had ample power to authorize the construction of the vault in question under the sidewalk, and the coal hole in the walk, to connect with the vault thereunder, provided the paramount right of the pub-

lic to the full, free and safe use of the street, in all of its parts, was not thereby infringed.''

We think appellee's remedy is not against the city. If anyone is liable, it would seem to be the owner or occupant of the premises, for the benefit of whom the opening in question was made.

The judgment will be reversed.

*Reversed.*