Peter Eidem, Appellee, v. Chicago, Rock Island & Pacific Railway Company, Appellant.

Gen. No. 4,927.

1. VERDICT—*when set aside as against the evidence.* While it is true that it is the province of the jury to determine conflicts in the evidence and the duty of the court to give their verdict due and careful consideration, yet when it is apparent that such verdict may have been brought about by some error of law on the part of the trial court or by passion, prejudice or bias on the part of the jury, it is equally the duty of the appellate court to set aside the judgment.

2. VERDICT—*when set aside notwithstanding remittitur.* A large verdict reduced by a considerable *remittitur* may be set aside on review if such action would best tend to promote an impartial administration of justice, as such a verdict which does not show complete accord between the trial judge and the jury is not entitled to the same presumptions as being fair as are accorded to a verdict where no such discord appears.

3. INSTRUCTIONS—*when upon preponderance of evidence erroneous.* An instruction upon this subject is erroneous which merely tells the jury "that the weight of the testimony does not necessarily depend upon the greater number of witnesses sworn on either side of the question in dispute," but that the jury are at liberty, as jurors, to consider all the facts and circumstances appearing from the evidence in the case and determine from that which of the witnesses are worthy of the greater credit.

DIBELL, J., dissenting.

Action in case for personal injuries. Appeal from the Circuit Court of Rock Island county; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed April 14, 1908. Rehearing denied October 14, 1908.

JACKSON, HURST & STAFFORD, for appellant; BENJAMIN S. CABLE, of counsel.

SEARLE & MARSHALL, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

As appellee, Peter Eidem, was crossing from a passenger car to the depot platform or station grounds at Moline, Illinois, he was struck by an engine of appellant, the Chicago, Rock Island & Pacific Railway Company, and his legs so mangled that they had to be amputated above the knees. He brought this action in the Circuit Court of Rock Island county to recover damages therefor. The declaration as originally filed contained four counts, to which, at the close of the evidence, by leave of court, five more were added. The court directed the jury to disregard the first count of the original declaration. The substance of the negligence charged in the various counts is, that appellant made it a practice not to stop its train but negligently slackened the speed and compelled plaintiff and the other workmen to leap therefrom while it was in motion; that it negligently ran its road engine at a high and dangerous rate of speed and at a rate of speed forbidden by an ordinance of the city of Moline; that it negligently ran its engine without continuously ringing a bell in violation of an ordinance of said city; that it negligently ran its road engine between the depot platform and the passenger car from which plaintiff was alighting. The declaration in each count also averred due care on the part of appellee while alighting from the car and crossing to appellant's depot platform. A plea of not guilty was interposed, a trial had

resulting in a verdict for appellee of $25,000, a motion for a new trial was made, a *remittitur* was required by the court and entered for $9,000, the motion for a new trial was overruled, judgment was entered on the verdict for $16,000 and this appeal was taken by the defendant.

The evidence shows that appellant operated a double track railroad running east and west through the city of Moline, the east-bound track being next its depot. The space used for depot purposes consisted of a triangular strip of land extending from the east line of Thirteenth street to the west line of Fourteenth street in said city, a distance of 328.4 feet measured along the east-bound track, which strip outside the building was paved with brick and used for station purposes. Standing thereon with its west line 12.5 feet east of the east line of Thirteenth street, was the depot or station building 80.5 feet long and 26.77 feet wide, and adjoining it on the east, a baggage room, 24.2 feet long and 20.5 feet wide. Along the middle of the north side of the main part of the depot, extended a wooden platform about 40 feet long with steps at each end leading to the pavement. In January, 1906, appellee who lived at Moline entered the service of appellant and worked from 1 P. M. to midnight daily as freight truckman at Silvis, some six miles east of Moline. A number of men who lived at Moline and other stations west worked at Silvis, and appellant ran a train consisting of a switch engine and one passenger car from some point west of Moline to Silvis and back, to carry these laborers to and from their homes. At one o'clock A. M. on April 11, 1906, appellee with fifteen or twenty other workmen left Silvis on this work-train which proceeded to Moline on appellant's west-bound track. When it was between Fifteenth and Fourteenth streets, appellee went to the front platform, and between Fourteenth and Thirteenth streets stepped or jumped from the lower step and was struck by a road engine running east on the east-bound track.

Eidem v. C., R. I. & P. Ry. Co., 144 App. 320.

Appellee testified that he went out on the platform
when the train was between Fourteenth and Fifteenth
streets and stayed there until they were opposite the
depot, when he got off.  Just as he stepped on the
track he saw the light of the approaching road engine
about ten or fifteen feet away but did not hear the
bell ring at any time.  The head light was not bright
but reddish or yellow and the place where he stepped
off was directly in front of the steps which go into the
depot.  On cross-examination, he stated that he was
the first one out of the car and that he stood on the
step and did not look.  He did not know whether a train
was coming or not.  He thought if he had stuck his
head out he could have seen.  When he got off he did
not look to see if anything was coming.  The work-
train was moving when he got off and he did not think
of such a thing as a train coming in there and did
not pay any special attention to anything but getting
off.  He had plenty of time to look if he had thought
a train was coming.  He never knew the train to stop
when he got off.  They always got off before it stopped.
Henry Maude, who also worked at Silvis for appellant,
and who was on the work-train at the time of the ac-
cident standing directly behind appellee on the plat-
form when he alighted from the car, testified that the
custom was not to stop this work-train when the men
got off.  At the time of the accident it was going at
about two miles per hour.  He did not hear a whistle
sound or a bell ring on the road engine.  Maude said
that appellee at the time he was struck was right op-
posite the steps on the east side of the depot.  In his
judgment the road engine was going at from ten to
fifteen miles per hour and had a red or yellow head
light, which in his judgment was an oil light.  When
appellee was struck he was opposite the main door of
the depot and when he was picked up he was four or
five feet east of the baggage room.  John Peacock tes-
tified that he went to the scene of the accident, where
his attention was called to one of appellee's feet wedged

in the rail about five or ten feet east of the baggage room. Swan Larson, a patrol man at Moline, testified that he went to the scene of the accident and saw appellee's foot squeezed in between the rail and plank ten or fifteen feet east of the east end of the depot. Robert Carlson, employed by appellant at Silvis and on the work-train at the time of the accident, testified that sometimes the train would stop when it reached the station at Moline and sometimes it would not. He thought the train had stopped when appellee stepped off. The engine that struck him was going at the rate of from ten to fifteen miles per hour. He did not think the whistle was blowing. The engine had a light which he knew was not an electric light. Dale Baird, employed at Silvis by appellant and on the work-train at the time of the accident, testified that sometimes the train would stop at the Moline depot and sometimes it would not. The engine that hit appellee was going at the rate of from fifteen to twenty miles per hour and the work-train stopped as it passed. Appellee was about opposite the northeast corner of the baggage room after he was struck. Witness did not hear the bell on either engine and did not know whether the whistle on either engine was blown. Richard Thomas, fireman on the road engine, testified that their engine was going about four miles per hour and that its bell was ringing when it passed through Moline. When it stopped, the tender was opposite where appellee's legs were cut off, just ninety-two feet from the west edge of Fourteenth street. The work-train was going about as fast as their engine when appellee got off. On cross-examination he testified that the engine had an electric light and that he first saw the car of the work-train when the road engine was just east of Thirteenth street. The switch engine was crossing Fifteenth street when he first saw it. The whistle on the road engine was not blown then because there was no reason for it. He thought they had plenty of time to meet the switch engine before it reached the depot.

Eidem v. C., R. I. & P. Ry. Co., 144 App. 320.

They passed about 100 feet east of the depot and the
road engine stopped in about sixty-eight feet. When it
stopped it was ninety-two feet from the west line of
Fourteenth street. Appellee was struck 117 feet east
of the east end of the baggage room. Henry Geisen-
hagen, engineer on the road engine, testified that the
engine had an electric head light and that it was lighted
that night. It also had an automatic bell ringer and
the bell was ringing when they passed through Moline.
He first saw the switch engine when it was near Fif-
teenth street. His engine was going four or five miles
per hour and the switch engine about as fast. He
stopped his engine about seventy or eighty feet from
Fourteenth street after appellee was struck. The road
engine did not come between the work-train and the
depot, and the train was not at the depot at the same
time as the road engine. The work-train stopped close
to Thirteenth street. James Hughes, fireman on the
switch engine, testified that the road engine had an
electric head light and was going about five miles per
hour. He did not remember any nights that they had
not stopped at Moline depot. He heard the bell on the
road engine ring and said that appellee was about
eighty feet from the depot when he was struck. The
switch engine stopped so that the pilot was even with
the baggage room, and as the cabs of the engines passed
they were about thirty feet east of the baggage room.
Fred Shaw, engineer on the switch engine, testified that
the engines passed about sixty feet east of the baggage
room. The work-train was going about four miles per
hour. The bell on the road engine was ringing. He
helped to take appellee's foot from the track where
it was wedged in, ninety-two feet from Fourteenth
street. There was no night when they did not stop
at Thirteenth street, and they always came to a full
stop at the depot. August Sandberg, employed by ap-
pellant at Silvis, and on the work-train at the time
of the accident, testified that the train always stopped
at Moline. He judged it was going four or five miles

per hour at the time of the accident. Frank Strong, switchman in charge of the train crew on the work-train, testified that the road engine had an electric head light, and that he saw appellee's legs wedged in next the rail about eighty-five feet from the east end of the baggage room. He did not hear the whistle or bell on the road engine. Oscar E. Samuels, employed by appellant at Silvis, and on the work-train at the time of the accident, testified that it was the custom to come to a full stop at Moline. The road engine had a bright light and the work-train was going about three or four miles per hour. It always came to a full stop at the depot at Moline whether the men got off or not. He judged the road engine was going not over four miles per hour, and he did not hear the bell or the whistle. Henry Glick, switchman on the train crew of the work-train at the time of the accident, testified that the work-train stopped east of the depot. The road engine had an electric head light and was not going more than four or five miles per hour. The work train passed the road engine east of the depot seventy-five or eighty feet, and always came to a full stop at Moline. The men were in the habit of getting off before the train stopped every night and he had warned them not to do this. Appellee testified in rebuttal that he never was warned and never heard any such warning given.

There is no evidence tending to establish the averment that appellant compelled appellee to alight from the work train before it stopped. There is some evidence tending to show that when appellee alighted from the work train it had stopped and was opposite the depot platform, but the preponderance of the evidence seems to be that it had not stopped but was running slowly and was still east of the depot building. It will be observed that the evidence is in great conflict as to whether the road engine was running slowly or rapidly, under or above the rate of speed prescribed by the ordinance, and as to whether its bell was continuously

ringing as the engine approached and passed the work-train. In fact the evidence is sharply conflicting upon every averment of negligence contained in appellee's declaration on which there is any proof whatever, and also as to whether the acts of appellee indicated due care on his part. While it is true that it was the province of the jury to determine such conflict, and the duty of the court to give their verdict due and careful consideration, yet when it is apparent that their verdict may have been brought about by some error of law on the part of the court or by passion, bias or prejudice on the part of the jury, it is equally the duty of the court to set aside the judgment.

In view of the fact that this judgment must be reversed and the cause submitted to another jury, we refrain from expressing any opinion on these disputed facts in this record.

Complaint is made of appellee's fourth instruction which reads as follows:

"The jury are instructed that the weight of the testimony does not necessarily depend on the greater number of witnesses sworn on either side of the question in dispute, but you are at liberty as jurors, to consider all the facts and circumstances appearing from the evidence in the case, and determine from that, which of the witnesses are worthy of the greater credit."

This instruction admitted the element of numbers which should have been considered by the jury with all the other elements that are mentioned in the instruction. Gage v. Eddy, 179 Ill. 492. In Chicago Union Traction Company v. Hampe, 228 Ill. 346, the court in passing on an instruction that enumerated the various matters to be considered by the jury, omitting, however, any reference to the number of witnesses testifying pro and con, said, "it omitted one very important element and for that reason should have been refused." In E. J. & E. Ry. Co. v. Lawler, 229 Ill. 621, the court in passing on an instruction containing the following words, "The jury are instructed that the pre-

ponderance of evidence in a case is not necessarily alone determined by the number of witnesses testifying to a particular fact or state of facts,'' said, ''The element of numbers should be considered by them with all the other things which are mentioned in the instruction. * * * We do not think that this court has given its unqualified approval to this instruction, or that it might not be misleading in a case where the question of numbers was important and no other instruction given supplementing it.'' In this case, the instruction complained of was not supplemental, and the number of witnesses testifying on some of the issues involved may have been material.

It is urged that appellee's seventh instruction was erroneous. We have examined this assignment of error and cannot see that there was any prejudicial error in the ruling of the court in the respect complained of.

Appellant urges that the verdict for $25,000 can only be accounted for on the grounds of prejudice, passion or misconception on the part of the jury and that the *remittitur* of $9,000 does not remove the prejudice, passion or misconception and argues that these elements may have entered and probably did, into the finding of facts, if not the issues themselves. The trial court recognized the fact that the damages as found by the jury were excessive and appellee conceded that they were and entered the *remittitur*. While it must be said that by the law as settled it is in the power of the trial court to enter judgment on verdicts, as the one under consideration was, to an amount satisfactory to the trial judge, and the entering of such judgment is not error, yet the judgment is anomalous and in a reviewing court cannot be entitled to the presumption of a fair verdict which results from concurrence upon all the issues by the jury and the court. C. & N. W. Ry. Co. v. Cummings, 20 Ill. App. 333. In the exercise of the revisory power of this court, we may reverse a judgment rendered under such circumstances as appear in the record in the absence of errors of law,

where in our opinion such course would best tend to promote the impartial administration of justice.

In view of the conflict in the evidence, the error indicated in appellee's fourth instruction, and the impeachment of the verdict by the trial judge in compelling a *remittitur* of thirty-six per cent. of the verdict, in which appellee concurred, the rights of the parties should be submitted to the consideration of another jury.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*

Mr. Justice DIBELL, dissenting.

I am of opinion that this judgment should be affirmed.