## Julia O'Donoghue, Appellee, v. City of Chicago, Appellant.

## Gen. No. 16,109.

1. NEGLIGENCE—*when evidence does not establish constructive notice of defective condition of sidewalk.* *Held,* under the evidence, that notice of the defective condition of the sidewalk in question had not been established.

2. INSTRUCTIONS—*when upon preponderance of evidence erroneous.* Where in determining the question of where the preponderance lies it is apparent that the number of witnesses is a material element it is error by instructions to ignore the question of the number of witnesses as bearing upon the question of preponderance.

KAVANAGH, J., dissenting.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the HON. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and remanded. Opinion filed February 13, 1912.

EDWARD J. BRUNDAGE and JOHN R. CAVERLY, for appellant; EDWARD C. FITCH, of counsel.

QUIN O'BRIEN and LAWRENCE W. POTTER, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment of the Superior Court of Cook county against appellant, City of Chicago, defendant below (and hereinafter referred to as defendant), in favor of appellee, Julia O'Donoghue, plaintiff below (and hereinafter referred to as plaintiff), in an action of trespass on the case to recover damages for injuries sustained by her as a result of falling on a wooden sidewalk alleged to have been defective. The accident occurred on the morning of October 7, 1904, and by reason, as it is alleged, of a coal hole cover, in the sidewalk in front of No. 8 In-

stitute Place, Chicago, being defectively supported and unfastened, which tipped or turned up when plaintiff stepped upon the same permitting her right foot and leg to go down through the coal hole opening. The jury returned a verdict, December 17, 1908, against defendant for $5,000; and subsequently defendant made a motion for a new trial, and plaintiff remitted $2,500, and, on February 6, 1909, judgment was entered for $2,500.

The principal errors assigned are that the verdict is contrary to the weight of the evidence and to the law, that the trial court erred in giving the seventh instruction requested by plaintiff, and in admitting certain testimony relative to plaintiff's miscarriage, and that the damages awarded are excessive and the result of passion and prejudice.

It appears from the testimony of the plaintiff that on the morning of October 7, 1904, she was returning home from church; that while walking fast on a wooden sidewalk in front of No. 8 Institute Place, and not paying any particular attention to the sidewalk, she stepped on the side of an iron coal hole cover, and it "jumped up" and hit her on the cap of the knee, and her right leg went down into the coal hole as far as her hip; that she did not see the coal hole cover before she came to it, and does not know whether the cover was half on the coal hole or not; that she screamed and three boys, who were across the street and who had not noticed her until she called out, came over to her and helped her out of the hole to some steps, where she sat a few minutes until a Mrs. McGowan came along and assisted her part way to her home; and that prior to the accident she frequently walked on said sidewalk, and never noticed anything particular about it.

Mrs. McGowan, a witness for plaintiff, testified that on that morning she, also, was coming from church,

and when she first saw plaintiff, the latter was sitting on some steps about three or four feet away from the coal hole; that she saw plaintiff's knee and it was "all scratched up;" that she assisted her as far as Orleans street and went on home; that the sidewalk was not a new sidewalk, but was "kind of rickety;" that the iron lid of the coal hole was off and was laying a foot or two from the hole; that the walk looked as if it had not been swept up, was "dusty like," and small chips and pieces of wood were lying around.

The three boys, who were across the street, and who approached plaintiff, when attracted by her calls for assistance, and who helped plaintiff up, were each witnesses for the plaintiff, and were ten, nine and nine years of age respectively at the time of the accident. O'Grady, the eldest of the three, testified that Dorgan and he helped plaintiff up, carried her as far as the steps, and then "got a grab on her" and took her to an alley, 50 feet distant, when Mrs. McGowan came along and walked away with plaintiff; that when he first went over to help plaintiff the coal hole cover "was half on and we lifted it off to one side;" that he "didn't take any particular notice of the coal hole cover," (which was about 18 inches in diameter), nor any of the other coal hole covers; that he did not notice any pieces of wood or dust on the sidewalk; that "there were no iron rings around the coal hole;" that the iron of the cover was "kind of turned up;" that the sidewalk was "kind of rotten;" that "around the coal hole a board was loose where the iron laid;" that he had known the condition of the sidewalk, coal hole and cover for three months before the accident; that the boards were loose and most of them rotten; that during said three months the cover "wasn't exactly down, there were some rusty nails, but those didn't hold it on," and that during said time all the boys would play tag around there. Mulcahy testified that

he was "not sure" whether or not there was any iron rim around the coal hole; that "he can't remember where the cover was," nor did he notice anything about the cover; that the sidewalk "was not of solid boards," but that he "didn't notice much." Dorgan testified that before that morning he "did not know the condition of the sidewalk;" that when he went over there to pick plaintiff up "the cover was half on and half off" the coal hole; that "we pushed it right back on when we took the lady out;" that "all around the coal hole the wood was kind of rotten."

Joseph Schraw, also a witness for the plaintiff, testified he was a carpenter by trade; that he had lived at No. 1 Institute Place for two years prior to the accident; that he frequently walked on the sidewalk in question; that the edge of the wood was "pretty rotten," and that a majority of the planks were rotten, but that he never took any particular notice of the coal hole.

Seven witnesses who frequently walked over the sidewalk testified for the defendant as to the condition thereof at, and prior to, the time of the accident, and all testified to the effect that it was in good condition and that they never saw anything the matter with it. Four of these witnesses testified that the sidewalk was built with new boards in the year 1900, about four years before the accident. Several testified that there were no rotten boards or holes in the sidewalk, and that the coal hole covers were firm, fitted close and did not move when stepped upon, that the public used the sidewalk constantly, and that many children attending a near-by school daily played and romped over the sidewalk and coal hole covers.

It is contended by counsel for appellant that before a city can be held liable for injuries occasioned by a defect in a sidewalk, the city must have had either actual or constructive notice of the existence of such

defect in time to remedy it by the exercise of reasonable diligence before the happening of the accident, that in this case it is not claimed that the city had actual notice of any defect in the sidewalk or coal hole cover, and that the manifest weight of the evidence establishes conditions which rebut constructive notice to the city.

After a careful review of the entire record, we are of the opinion that the evidence does not disclose such facts and circumstances as would render the city liable, under the doctrine of constructive notice, and there is no claim of actual notice. Joliet v. Gerber, 21 Ill. App. 622; Sherman v. Chicago, 101 Ill. App. 312; Chicago v. O'Brien, 128 Ill. App. 350; Chicago v. Murphy, 84 Ill. 224; Boender v. Harvey, 251 Ill. 228.

It is further contended that the trial court erred in giving to the jury the seventh instruction on behalf of the plaintiff, which is as follows:

"In determining upon which side the preponderance of the evidence is, the jury should take into consideration the opportunities of the several witnesses for knowing the things about which they testify, their conduct and demeanor while testifying, their interest or lack of interest, if any, in the result of the suit, the probability or improbability of the truth of their several statements in view of all the other evidence, facts and circumstances proven on the trial, and from all the circumstances determine upon which side is the weight or preponderance of the evidence."

It will be noticed that this instruction makes no reference to the number of witnesses, and in telling the jury what elements they are to consider in determining upon which side the preponderance of the evidence lies it ignores the element of the number of witnesses. And in this case it is apparent to us that the number of witnesses was an important element. We think the giving of this instruction, under the state of the evidence in this case, was prejudicial to the defendant,

and erroneous. Chicago Union Traction Company v. Hampe, 228 Ill. 346, 350; Elgin, etc., Ry. Co. v. Lawlor, 229 Ill. 621, 630; Sullivan v. Sullivan, 139 Ill. App. 378, 382; Eidem v. Chicago, etc., Ry. Co., 144 Ill. App. 320, 327; Lyons v. Ryerson, 242 Ill. 409, 417; Thompson v. Dering Coal Co., 158 Ill. App. 289, 291.

In view of what has been said, it will be unnecessary for us to discuss the other points raised by appellant. For the reasons stated the judgment of the Superior Court is reversed and the cause remanded.

*Reversed and remanded.*

MR. JUSTICE KAVANAGH, dissenting. I am unable to concur in the majority opinion upon the question of fact in this case. As shown in the main opinion, the iron cover in question was loose, and the plaintiff stepped on it. Several witnesses testify as to defective conditions surrounding it at the time, which might well count for its being loose; that for three months before, the boards surrounding the hole were rotten; that they would not hold a nail; that there was no iron rim for the cover to rest upon. If this testimony were true, the finding of the jury is absolutely justified.

I am well aware that in some of the Appellate Courts in this State there is a recent tendency of decision which justifies the main opinion—a tendency on the part of the upper court not to review for error, but, as it seems to me, to supervise the trial of the court below, and often, in a way, belittle the effect of the verdict of the jury. Such a tendency, in my opinion, violates the clear provisions of the established law, and reflects upon the wisest establishment in our judicial system. Under the law it is assumed, and must be assumed, so long as our present system is maintained, that the jury is intelligent, fair and honest; that the result of its collective experience focused upon matters within its province, is better than that

of the trial judge and of much greater value than the judgment of the Appellate Court.

In the case under consideration, to discredit the verdict is, in effect, to pass upon the credibility of the witnesses. To disregard the testimony of three or four seemingly disinterested witnesses, in favor of seven or eight opposing them, and to set aside the solemn verdict of the jury, because of giving more weight and credit to the seven or eight opposing witnesses—a verdict sanctioned by the judgment of the trial judge, who also saw and heard the witnesses—is, in my opinion, a dangerous departure from the established rules of law.

Appellate courts are not organized to say whether the judgment of the court below, in a suit at law, is just; but only to ascertain whether prejudicial error has been committed.

I am unable, therefore, to concur in the majority opinion.