## Joseph Loftus, Appellee, v. Illinois Midland Coal Company, Appellant.

1. MINES—*when flagman acting in line of his employment.* Plaintiff, a flagman in a mine who was injured when a car was derailed while he was assisting a driver, is to be regarded as having been acting in the line of his employment where the evidence tends to show that it was a part of his duty to assist drivers and that on the occasion in question the assistant mine boss directed him to go with such driver and help bring in certain cars.

2. MINES—*proximate cause of injury.* It is a question of fact whether the mine operator's wilful failure to comply with the Mines and Miners Act by failing to furnish refuge places was the proximate cause of an injury to a flagman assisting a driver when a derailed car turned cross-wise and struck him.

3. DAMAGES—*admissibility of evidence.* Where the declaration alleges that some organs of plaintiff's body have become paralyzed and rendered entirely impotent, evidence is admissible that injury to the

prostate gland would impair vitality and affect the power of procreation, and any circumstance traceable to the injury which tends to prove impotency whether temporary or permanent is proper.

4. APPEALS AND ERRORS—*effect of remittitur.* While the trial court may enter judgment on verdicts with the consent of the successful party for a sum less than the amount of the verdict, yet the judgment is anomalous and in a reviewing court is not entitled to the presumption of a fair verdict.

5. DAMAGES—*when excessive.* When it is alleged that plaintiff was crushed, bruised and wounded whereby some of the organs of his body were paralyzed and rendered entirely impotent and under the evidence the injury is of doubtful extent and permanency, a verdict for $17,000 is excessive and a remittitur of $7,000 does not cure it.

6. DAMAGES—*instructions.* An instruction on the measure of damages in an action for personal injuries which particularly calls attention to the "total or partial loss of virility or masculine vigor if the evidence proves such loss," while not reversible error, calls attention to a feature likely to arouse prejudice and passion.

Appeal from the Circuit Court of Sangamon county; the HON. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the April term, 1912. Reversed and remanded. Opinion filed May 19, 1913.

BROWN & HAY and JOHN T. CREIGHTON, for appellant; MASTIN & SHERLOCK and UNDERWOOD & SMYSER, of counsel.

DRENNAN & LAWLER, for appellee.

PER CURIAM. This was an action on the case brought by appellee in the circuit court of Sangamon county, against the appellant, to recover for injuries alleged to have been received by appellee while employed in appellant's coal mine as a flagman. The declaration contains one count, based upon the alleged failure of appellant to furnish in "the first west entry off the south main entry," refuge places as required by clause "B" of section 15 of chapter 93 of the Revised Statutes. A plea of the general issue was filed to the declaration, trial had before the court and a jury, and verdict returned in favor of the appellee in the sum of $17,000. Upon motion a remittitur in the sum of $7,000 was

filed, a motion for new trial made and overruled and a judgment entered in the sum of $10,000 in favor of appellee, from which judgment an appeal was perfected, thus bringing the record before us for review.

It appears from the weight of the evidence in the case, that at the date of receiving the injury complained of by appellee, the appellant was operating its coal mine at Pawnee, in said county, in which it had a hauling road on which hauling was done by draft animals, and that appellee was employed therein by appellant as a flagman, and while so engaged, he was directed to assist Frank Reed, a driver, in managing his team while the driver was picking up some lost cars in the "first west entry off the south main entry;" that after the cars had been located and while the driver was coupling them up and hitching the mules to the cars, appellee was at the head of the front mule holding the team; that when the mules were hooked to the cars the driver asked if appellee was all right, and when appellee said he was, the driver whistled at his mules and they started at a rapid pace; that the appellee had traveled a distance of fifteen or twenty feet, got up against the wall of the entry and by one of the props of the entry, which was as secure as any place in that immediate neighborhood; that one of the cars left the track, turned cross-wise, struck appellee and produced the injury, as disclosed by the evidence.

It further appears from the evidence that no effort had been made by appellant to comply with the section of the statute relied upon for recovery in this case. At one time in the history of the mine, there had been cross entries made in working out the mine, but these had been closed, so that on the day in question, there was no refuge place and no cross openings or rooms in this entry, as provided by statute.

The evidence also shows that there was no clear space beyond the width of the car on either side of the track of two and one-half feet. It is also shown by

this record that the space on either side of the cars was described as being of the width of from eight inches to two feet; that gob and dirt and old props covered the space between the walls of the entry and the cars.

It is urged by appellant that appellee was a volunteer upon the occasion in question, and not acting in the line of his employment. While we have stated above that at the time of the injury appellee was engaged in the line of his duty, the earnestness with which this question is urged prompts us to a further reference to the record.

Appellee testified that when he was employed by Mr. Pearce, the driver boss of appellant, as flagman, he was told that it would be a part of his duty to assist the drivers. Four other witnesses to-wit: Frank Reed, Frank Patton, Thomas Duval and William Duval, testified to hearing Mr. McMurdo, appellant's assistant mine boss, direct appellee to go with driver Reed and help to bring in the lost cars.

Thus it will be seen he was not a volunteer, but was there under his employment.

It is contended by appellant, notwithstanding the failure of appellant to provide refuge places in this entry for the protection of its employes, that there is nothing in the record to show that such failure was the proximate cause of the injury.

It is a question of fact whether the mine operator's wilful failure to comply with the provisions of the Mines and Miners Act was the proximate cause of the injury to appellee. *Missouri Malleable Iron Co. v. Dillon,* 206 Ill. 145; *Kellyville Coal Co. v. Strine,* 217 Ill. 516; *Athens Min. Co. v. Carnduff,* 221 Ill. 354; *Olson v. Kelly Coal Co.,* 236 Ill. 502.

Proximate cause of an injury is, in law, the probable cause of such injury. It is probable that if the refuge places had been provided as required by law, that any intelligent person would not have failed to have made use of them in time of danger. If the statute under

consideration had been complied with, every workman in the entry would have been, at farthest, within thirty feet of such a refuge place, or place of safety. It will be remembered that the injury to appellee occurred from 130 to 150 feet from the entrance to this entry. Had the law been complied with, one refuge place would have been in from ten to thirty feet of appellee. It was the duty of the jury to pass upon the question of the probable cause of appellee's injury, and their findings rest upon the same rule as a finding upon any other question of fact. There must be sufficient facts and circumstances tending to support the verdict of a jury before it should be permitted to stand. Under our view of the evidence on that question, the finding of the jury that defendant was negligent is supported by the evidence.

It is further urged by appellant, that the court erred in admitting evidence that injury to the prostate gland would cause a lessening of tone, would impair vitality and masculine vigor and would affect the power of procreation, while the allegation of the declaration was that such injury caused impotency.

Any fact or circumstance traceable to the injury in question which tended to prove impotency, or any other allegation of fact, was proper, under the declaration, to be submitted to the jury for their consideration. The whole diagnosis of the injury to appellee, if made and testified to by a competent physician, was proper evidence for the consideration of the jury. While the permanent character, or temporary nature of the effect of the injury upon the impotency of the appellee was a proper matter to be considered by the jury in determining the measure of damages in this case, it cannot be conceded to depend upon the question of the permanent character of such impotency.

The declaration alleged that appellee, by reason of such injury, became sick, sore, crushed, bruised, wounded, etc., ''by reason thereof he is permanently

injured and some of the members and organs of his body have become paralyzed and rendered entirely impotent," and that he will continue to suffer anguish of mind "over his crippled and impotent condition."

The definition of "impotent" as given in the Universal Dictionary of the English Language, is "deficient, incapacity, weak, feeble, one who is feeble, infirm or languishing from disease, or destitute of power of sexual intercourse."

Impotency, as classed in Bouvier's Law Dict., may be "curable, incurable, accidental or temporary."

Thus it will be seen that impotency, like other diseases and injuries, may attain minor or major states; it may be curable or incurable. If curable, it may last a year or years, or a few months. In incurable it is, of course, permanent in character. If the parts are weak, feeble, incapacitated or infirm for a period, the party is no less impotent during that period than if it were permanent in character. Hence we say, it was not essential that the evidence should show the condition was necessarily permanent in order for the evidence complained of to be proper.

It is contended that the amount of the verdict can only be accounted for on the grounds of prejudice and passion or misconception on the part of the jury, and that the remittitur of $7,000 does not remove the prejudice, passion or misconception, and that these elements may have, and probably did enter into the finding of facts, if not the issues themselves. The trial court recognized the fact that the damages as found by the jury were excessive, and appellee conceded that they were and entered the remittitur. While it is the settled law, that it is in the power of the trial court to enter judgment on verdicts with the consent of the successful party for a sum less than the amount of the verdict, and the entering of such judgment is not error, yet the judgment is anomalous, and in a reviewing court is not entitled to the presumption of a fair

verdict.   We think the error of such an excessive ver-
dict cannot be cured by a remittitur.   *Loewenthal v.
Streng,* 90 Ill. 74; *Chicago & N. W. R. Co. v. Cum-
mings,* 20 Ill. App. 333; *Eidem v. Chicago R. I. & P. R.
Co.,* 144 Ill. App. 320; *Sackheim v. Miller,* 136 Ill. App.
132.   The instruction on the measure of damages par-
ticularly called the attention of the jury to the "total
or partial loss ·of virility or masculine vigor, if the
evidence proves such loss, by reason of his injury."
This, while not alone reversible error, particularly
called the attention of the jury to a feature of the case
very liable to arouse prejudice and passion.   The judg-
ment as entered is still very large when the very doubt-
ful extent and permanency of the injury as shown by
the evidence is considered.   In view of the excessive
verdict and large remittitur, we hold that the rights
of the parties should be submitted to another jury.
The judgment is therefore reversed and the cause
remanded.

*Reversed and remanded.*