(No. 4638—)

CARRIE JOYNER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 23, 1955.*

HARRY D. HORN, Attorney for Claimant.

LATHAM CASTLE, Attorney General; MARION G. TIERNAN, Assistant Attorney General, for Respondent.

WHAM, J.

This is an action brought by claimant, Carrie Joyner, against respondent, State of Illinois, to recover the sum of $7,500.00 in damages for personal injuries alleged to

have been sustained on July 2, 1953, as the result of a fall, when she allegedly stepped into a hole in the curbing at the intersection of Northwest Highway and Ozark Street in the City of Chicago.

It is admitted by respondent that the location, including the curbing mentioned above, is under the jurisdiction of the Department of Public Works and Buildings, Division of Highways of the State of Illinois, for all purposes of repair, reconstruction, operation and maintenance.

Claimant charges in the complaint that her fall and resulting injuries were due to the negligence of respondent in suffering and permitting the curbing to be and remain in a bad and unsafe condition, and in disrepair. She further alleges that respondent had notice or knowledge of, or, in the exercise of due care and caution should have had knowledge or notice of, the existence of the ''bad and unsafe'' condition of said curb for a long time prior to the date on which claimant sustained her injuries.

Claimant is a domestic worker, employed by a Mrs. Miller in Park Ridge, Illinois on one day of each week, and was so employed for a period of five years. It was her custom to take the elevated at 43rd Street and Cottage Grove Avenue near her home, and ride to the Berwyn Avenue ''L'' station, and then take a bus to Ozark Avenue and Northwest Highway, and thence by another bus to Park Ridge. Claimant testified that she walked over that particular curb many times before, at least once each week for five years, but that she at no time noticed the defective condition prior to the date she fell.

Claimant's only other occurrence witness, a Katherine Williams, had ridden with claimant to this intersection on a bus. She left the bus at the same place, as did

claimant, so as to wait for her employers to pick her up. She stated she saw claimant fall. She identified the defect in the curbing shown in claimant's exhibits Nos. 3 and 4 as correctly portraying the condition as it then existed. She testified that she had occasion to pass the particular corner prior to July 2, and had noticed the condition prior to that date. She was then asked these questions:

"Q. Have you any knowledge as to approximately how long prior to July 2, 1953 this condition in the curbstone on the Northwest Highway existed?

A. I could not say that.

Q. Have you any idea as to approximately how long?

THE COMMISSIONER: Q. When did you first see that curb in that particular broken condition?

A. About a month or six weeks before that."

On cross-examination she testified as follows:

"Q. Are you sure you saw this place in the curb six weeks or a month before, or could it have been two weeks before, for the first time?

A. It was quite some time. I could not say definitely."

Respondent offered in evidence one witness, James Whelan, who testified that he was the maintenance superintendent for the Division of Highways, District 10, which included the place of the accident. His duties consisted of supervising repair and reconstruction of all roads under his jurisdiction, which approximated roughly 189 miles of highway.

He inspected this highway, including the curbing, daily, and covered the entire area at least once a month. Crews assigned to him also patroled and inspected the highway.

The area was divided into six maintenance sections, and were patroled by one crew to each section. Each crew reported to Mr. Whelan daily on the condition of the highway, as well as the curbing. If repairs were needed on a curb, a separate construction crew of five

men was called upon to do the work. This construction crew took orders only from Mr. Whelan. If there was anything wrong with the curbing, Whelan would direct its repair. He at no time ordered the construction crew to make any repairs on the curbing at the intersection of Ozark Avenue and Northwest Highway. At no time did Whelan learn of the break in the curbing, although he always inspected the curbs when he inspected the highway.

It is obvious from the facts and the pleadings that no question of negligent construction or repair is involved herein. The only question of negligence is whether or not respondent should have discovered the defect, and effected repairs, prior to the accident.

It is the general and well established rule in Illinois, as well as elsewhere, that municipalities are not insurers against accidents in the streets, the extent of their duty being to use reasonable care to keep the streets and sidewalks in a reasonably safe condition for persons exercising due care for their own safety. *Vol. 9, Illinois Law & Practice*, p. 54.

The state is no more an insurer against accidents arising out of the use of sidewalks, highways or curbs under its jurisdiction than is a city of its sidewalks. The law of Illinois is clear that, before a municipality can be held liable for injuries caused by defective conditions of a sidewalk, it is necessary that there be some evidence showing, or tending to show, that the city had actual or constructive notice of the alleged unsafe condition. *Arnett* vs. *City of Roodhouse*, 330 Ill. App. 524 at 527 and 528; *Boender* vs. *City of Harvey*, 251 Ill. 228 at 231 and 232; *O'Donoughue* vs. *City of Chicago*, 167 Ill. App. 349 at 352 and 353; *Coffin* vs. *City of Chicago*,

254 Ill. App. 29; *City of Nokomis* vs. *Farley*, 113 Ill. App. 161 at 163; *Karczenska* vs. *City of Chicago*, 239 Ill. 483 at 485; *Powell* vs. *Village of Bowen*, 92 Ill. App. 453 at 454 and 455.

The burden of proving such actual and constructive notice, and the existence of such defect, is upon claimant. *Thien* vs. *City of Belleville*, 331 Ill. App. 337 at 345.

In *Dominic Di Orio, Et Al* vs. *State of Illinois*, 20 C.C.R. 53, and *Lillian Kamin* vs. *State of Illinois*, 21 C.C.R. 467, we have applied these same rules to claims against the state.

It is clear from the evidence that actual notice of the defect has not been established. The question is whether or not claimant has proven constructive notice.

Notice of the existence of a defect or obstruction in a municipal street may be implied, if the condition has existed for such a length of time that the corporate authorities should have ascertained its existence and effected a remedy. This is always a question to be determined under the circumstances of the evidence in each case.

The law is likewise well settled that it is not the absolute duty of municipalities, or in this case the State of Illinois, to discover and remedy defects in sidewalks, but only to use ordinary care and diligence to do so.

The state is not required to keep constant guard and watch over the walks, curbs and highways that are supposed to be safe and sufficient to see that someone or something does not break holes into or destroy them, or that such breaches do not occur from unexpected causes.

We must determine whether or not the evidence is sufficient to establish a lack of due care by respondent

to discover the defect and remedy it prior to the happening of the accident.

The only evidence offered in the case with respect to the length of time the defect existed prior to the accident was claimant's witness, Katherine Williams, who at first stated that she had seen the defect prior to July 2, 1953, the date of the accident, but had no idea as to approximately how long it had existed prior to the accident. She then stated she first saw it about a month or six weeks before the accident. Then, on cross-examination, when she was asked whether she was sure she had seen it six weeks or a month before, or whether it could have been two weeks before, she answered that it was quite sometime, but "I could not say definitely". This evidence amounts, in our judgment, to little more than a guess. We can place no approximate time of the existence of this defect from that testimony, which amounts to only that it had existed "quite some time".

If we were to consider that this testimony in and of itself established constructive notice, then, for all practical purposes, such an element would cease to be essential in proving claims against the state. The very basis of a case, such as this one, rests upon the length of time the defect existed. We, therefore, must require strong and convincing proof to establish this element.

It seems strange to us that, if the defect had existed for a substantial length of time prior to the injury, claimant herself did not see it on one of her trips across the intersection. She testified that she had never seen the defect, although she had crossed the intersection at least once a week for five years.

We also note from claimant's exhibit No. 3 that the curbing, except for the defect, looks to be in excellent

condition on both sides of the street. The break, as shown in the close-up in claimant's exhibit No. 4, does not appear to us to be one that shows a deterioration of the curbing. This intersection is in a residential area at a bus stop, and, if the defect had existed for any substantial length of time, more evidence should have been available to claimant than that which she has offered, and, if so, should have been presented at the hearing.

In addition to this, the evidence offered by respondent shows that a system of inspection had been established, and that at least once a month the entire area of 189 miles was inspected by respondent's maintenance superintendent, and at more frequent intervals by a patrol crew. From the standpoint of inspection of the curbs, this seems to us to have been a sufficient attempt on the part of respondent to see that they were maintained in proper condition. We cannot presume that the persons making the inspection were negligent in the performance of their duties, since the evidence of the length of time the defect existed is so speculative and inconclusive.

It is our judgment that claimant has not borne the burden of proving to our satisfaction, at least, that respondent was negligent in the inspection and maintetance of its curbing.

We, as a Court, must pass upon not only questions of law but questions of fact, and determine the weight that should be given to the testimony of witnesses. As stated in *Flint* vs. *State of Illinois,* 21 C.C.R. 80, at pages 82 and 83: "This Court must determine both the law and the facts in a case. Unlike courts of review, we cannot say 'it is for the jury', nor can we avoid our fact finding duties, as trial courts are able to do in jury cases."

In deciding this case, we have attempted to apply the facts to the law, as we understand them both to be, and have concluded that the record in this case does not justify our finding for claimant.

The claim is, therefore, denied, and it will be unnecessary to review the evidence from the standpoint of any other element.