CARLSON, Administratrix, Appellant, vs. CITY OF WASH-BURN, Respondent.

*January 14—February 9, 1915.*

*Municipal corporations: Sidewalk over ravine: Sufficiency of railing: Death of person: Proximate cause: Liability.*

1. In an action for death of a person who fell from a sidewalk where it crossed a ravine and who had stated, after the accident, that he was going to sit down and he fell over and that was the last he knew, the evidence is *held* insufficient to show that alleged defects in the railing along the walk were the proximate cause of the injury.

2. If the railing along a sidewalk where it crossed a ravine was reasonably safe and sufficient to protect persons traveling on the walk, the city is not liable for an injury to a person who fell into the ravine when he attempted to sit upon the railing.

APPEAL from a judgment of the circuit court for Bayfield county: G. N. RISJORD, Circuit Judge. *Affirmed.*

This action was brought to recover damages on account of alleged defects in a highway, which it was claimed caused the death of one Fred Carlson. His widow sues as administratrix. Two causes of action are set out in the complaint; the first to recover damages for pain, suffering, and medical expense incurred by the husband, and the second to recover damages under sec. 4255, Stats.

Between Fifth and Sixth avenues in the city of Washburn, Bayfield street crosses a ravine over which there is a bridge. The railing on the sidewalk of the bridge is twenty-seven and one-half inches high. The top rail was 2 x 4, and the posts seven feet nine inches apart. Halfway between the sidewalk and the top rail there was a 1 x 6 board. At a point on the sidewalk over the ravine the top rail was split several months before the accident. The split in the rail was about eighteen inches long and had been fixed by nailing or spiking the parts together. The bottom of the ravine was about twelve feet from the sidewalk at this point, and in it there were lying two logs extending at right angles with the bridge or trestle. The deceased was found lying between these logs, almost directly below where the railing had been broken. He was lying on his back, his feet away from the sidewalk and his head towards it. He was conscious, but could not move. His legs were completely paralyzed and his arms partly so. The injury was to the upper part of the dorsal spine. No bruises were found. He lived about five weeks. The deceased was thirty-nine years of age, over six feet tall, and weighed more than 200 pounds, and apparently had been in good health. He was last seen before the accident at half-past 8 o'clock in the evening. He was found about half-past 1 the following morning by a city policeman. The city lights were extinguished at 12 o'clock. No one apparently knew where Carlson was or what he did from 8:30 in the evening until he was injured. It was very dark after the street lights went out. A policeman in passing over the bridge heard some noise in the ravine, and, on going down to investigate, found Carlson. He asked Carlson how he got down there, and Carlson replied that he "was going home and it was an awfully warm night and he was going to sit down and he fell over and that was the last he knew of it." This was the only statement made by Carlson as to how he was injured. The railing where the split had been nailed or spiked together was found to be substan-

tially intact, although there was some evidence indicating that there was a little sag in it.

The court refused to admit any testimony in reference to the first cause of action, for the reason that the notice required by sec. 1339, Stats., had not been served. On the second cause of action the jury returned the following verdict:

"(1) Did the deceased, Fred Carlson, fall from the sidewalk or bridge in question and receive injuries from which he died?  A. Yes.

"(2) Was the walk at the time and place of the alleged injury to the deceased insufficient for public travel?

"(a) By reason of the railing being too low?  A. Yes.

"(b) By reason of defect in the top rail?  A. Yes.

"(3) If your answer to either 'a' or 'b,' or both, in the foregoing question is 'Yes,' then was such insufficiency the proximate cause of the death of Fred Carlson?  A. Yes.

"(4) Was the deceased guilty of any want of ordinary care which contributed proximately to produce his injuries? A. No.

"(5) At what sum do you assess plaintiff's damages? A. Five thousand dollars."

On motion of the defendant the court changed the answer to question 3 of the special verdict, holding that there was no evidence in the case which would warrant the jury in finding that the insecurity of the railing was the proximate cause of the injury to said Carlson. Judgment on the verdict as corrected was rendered in favor of the defendant, and plaintiff brings this appeal.

For the appellant there was a brief by *McCloud & Pierrelee,* and oral argument by *Victor T. Pierrelee.*

*E. C. Alvord,* for the respondent.

BARNES, J. The only evidence we have as to how the deceased was injured is his own statement that he was going to sit down and he fell over and that was the last he knew. If

this statement be accepted as the fact, it is difficult to see how the height or the condition of the railing could be said to be a proximate cause of the injury. The railing was found in practically the same condition after the accident that it was in before. But if the alleged defects in the railing were a proximate cause of such injury the city would not be liable, because it was only bound to make the railing reasonably safe and sufficient to protect those using the viaduct for the purpose of traveling over the same. *Kelley v. Fond du Lac,* 31 Wis. 179; *Goeltz v. Ashland,* 75 Wis. 642, 44 N. W. 770; *Hawes v. Fox Lake,* 33 Wis. 438; *Reed v. Madison,* 83 Wis. 171, 53 N. W. 547. Municipalities are not bound to build railings of any particular height to accommodate persons who desire to sit on them. Neither are they obliged to provide railings that may not sag a little when persons weighing over 200 pounds sit on them.

If the statement of the deceased be disregarded, the matter of causal connection between the injury and the defective railing rests entirely in the realm of speculation and conjecture. This connection might be shown by circumstantial evidence, but we are unable to find any facts or circumstances testified to from which an inference could be drawn that the result was due to the negligence complained of. The ruling of the circuit judge was correct.

*By the Court.*—Judgment affirmed.