(No. 5431-

PATRICIA K. HOFFMAN, Special Administratrix of the Estate of JOHN M. HOFFMAN, JR., deceased, and PATRICIA K. HOFFMAN, Individually, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed February 18, 1971.*

FRANK E. GLOWACKI & RICHARD J. PETRARCA, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; ETTA J. COLE, Assistant Attorney General, for Respondent.

DOVE, J.

This is a cause of action brought by Patricia K. Hoffman as Administratrix of the Estate of John M. Hoffman, deceased, for the wrongful death of the deceased

and for injuries to herself, arising out of a collision between an automobile driven by the deceased and another automobile on October 29, 1966, at the intersection of Exchange Road and State Route 1 in Will County, Illinois. Patricia K. Hoffman was a passenger in the automobile being driven by her husband, John M. Hoffman. Claimant alleges that the absence of a "Stop" sign at the intersection of Exchange Road and State Route 1 was the proximate cause of the accident.

Exchange Road is a public highway running in a generally East-West direction, and State Route 1 (The Calumet Expressway) is a public highway running in a generally North-South direction. At the time of the accident, the deceased, John M. Hoffman, was driving his automobile in a westerly direction on Exchange Road. Ivan Krapac, the driver of the other car involved in the accident, was driving in a northerly direction on State Route 1. At the time of the accident, the evidence clearly indicates that the "Stop" sign ordinarily in place at the Northeast corner of the intersection to stop westbound traffic on Exchange Road was down.

Claimant called Wayne D. Zipsie, a State Trooper, under Section 60 of the Illinois Practice Act. Zipsie testified that the intersection in question was part of his territory in Will County, Illinois; that State Route 1 is a two-lane highway with a 65 mph speed limit; and that thousands of automobiles use this highway at high speeds every day. Zipsie further testified that several hours prior to the accident he had reported by radio to his district headquarters that the "Stop" sign in question was down and requested the Highway Department to put up a new sign, and that he passed this intersection approximately five times in a nine-hour shift, and that there were three nine-hour shifts maintained by the State Patrol each day.

Dr. Lawrence G. Clark, a witness for claimant, testified that at 8:30 a.m. on Saturday, October 29, 1966, he passed through this intersection, and that the "Stop" sign was down at that time.

Ted Kloeckner, a witness for claimant, testified that on Saturday morning, October 29, 1966, he traveled Exchange Road to the Calumet Expressway and that at the intersection in question the "Stop" sign for traffic traveling westbound on Exchange Road approaching the Calumet Expressway was down.

William S. Landske, witness for claimant, testified that on Thursday morning, October 27, 1966, he noticed that the "Stop" sign in question was down. He further testified that the intersection in question is in a rural area and that there were cornfields to the left and right as one is traveling west on Exchange Road.

Theresa K. Rumas, a witness for claimant, testified that the "Stop" sign for westbound traffic on Exchange Road at the intersection with State Route 1 was missing on Wednesday, October 26, 1966.

Aloys J. Petry, another witness called by claimant, stated that on Thursday morning before the accident he came through this intersection driving westbound on Exchange Road and, not seeing a "Stop" sign, "almost slid into the intersection."

Patricia Hoffman testified that prior to the accident her husband had been working at a bakery of which he was a part owner, and that he went to work at 2:00 o'clock in the morning and returned home about noon. She testified that he had dinner, laid down and took a nap, and that when he awoke he shaved, dressed and went back to the bakery to check out. She further testified that, with her husband driving the automobile, about 40 miles per hour, they left their house about 5:00 o'clock p.m.; that she was sitting on

the passenger side in the front seat; and that visibility that night was fairly good. She further testified that as they approached the place of the accident, they seemed to slow down, but that she was observing the scenery and that the next thing she knew she was in the back seat of the car and had not heard any signals or horns or anything of that nature.

Ronald L. Youngblood was called as a witness for respondent. He testified that he is a Field Engineer for the Illinois Division of Highways, and that on October 29, 1966, he held the position of Field Traffic Engineer, and that the area of the accident was in his territory. Among other things, his testimony indicated that there was a warning sign "Stop Ahead" approximately 400 feet east of the intersection in question. He further testified that there was no corn field at the site of the intersection, and that there was no obstruction to his view of the Calumet Expressway as he traveled westbound on Exchange Road.

Carl F. Kowalski was called as a witness for respondent and testified that he was the District Traffic Engineer for District No. 10, and that the "Stop" sign in question was first reported down at 12:05 p.m. on October 29, 1966, approximately five hours prior to the accident. He testified that the report was received by the dispatcher, and that numerous attempts were made to contact employees of the Highway Division to re-erect the "Stop" sign in question. However, they were unable to reach anyone and the sign was not re-erected until approximately 11:00 o'clock p.m. on the evening of October 29, 1966.

Dr. Irwin I. Feinberg testified that Patricia Hoffman, as a result of the accident, suffered a fracture at the base of the fifth metacarpal in the left hand, a fracture of the superior and inferior remus of the pubis bone; that her left lung was collapsed due to contusion, and she had swelling

and pain in her left foot. She also had a contused bladder, and there was a paralytic ileous to the bowel because of the trauma to her groin area. He further testified that as far as permanency of the injuries was concerned, Mrs. Hoffman would have pain from time to time in the groin area, particularly with weather changes. Mrs. Hoffman testified that as to her present physical condition, she tires more quickly than she used to, and that certain movements are restricted, and that she cannot lift objects as she used to. There is evidence in the record that Mr. Hoffman was 35 years old when he died; that his life expectancy was 36.2 years; and that his average earnings for the five years preceding his death exceeded $13,000.00 per year.

Claimant contends that the State of Illinois was negligent in permitting and allowing a "Stop" sign for westbound traffic on Exchange Road at its intersection with State Route 1 to remain in a neglected and knocked-down condition, although the respondent knew, or in the exercise of ordinary care should have known, of the condition of the "Stop" sign.

The law in the State of Illinois is well settled that the State of Illinois is not an insurer of every accident that occurs on its public highways. *Riggins* vs. *State of Illinois*, 21 C.C.R. 434; *Gray* vs. *State of Illinois*, 21 C.C.R. 177. The State of Illinois does have the duty to exercise reasonable care in the maintenance and care of its highways, in order that defective and dangerous conditions likely to injure persons using the highway shall not exist. *Crouchet* vs. *State of Illinois*, 21 C.C.R. 157; *Moran* vs. *State of Illinois*, 24 C.C.R. 219.

In *Di Orio* vs. *State of Illinois*, 20 C.C.R. 53, this Court applied the same rules of law pertaining to notice in suits against the State involving defects in highways, as pertained to suits against municipalities involving injuries

caused by defective conditions in sidewalks. The law in Illinois is clear that before a municipality can be held liable for injuries caused by the defective condition of a sidewalk, it is necessary that there be evidence showing that the City had actual or constructive notice of the alleged unsafe condition. *Arnett* vs. *City of Roodhouse,* 330 Ill. App. 524; *Coffin* vs. *City of Chicago,* 254 Ill. App. 29.

The crucial question in determining the responsibility of the State of Illinois for the accident is whether or not the State of Illinois had sufficient notice of the defect, namely the fact that the "Stop" sign was down at this busy intersection, and was negligent in allowing this condition to remain uncorrected. There is testimony in the record that the "Stop" sign in question was down on Wednesday, October 26, 1966, three days before the accident. There is also testimony in the record that the State Highway Patrol regularly patrolled this area, and that the State Police ordinarily passed this intersection approximately 15 times each day, and that other employees of the State Highway Division patrol the highways regularly. Carl F. Kowalski, District Traffic Engineer, testified that the sign was first reported down at 12:05 p.m. on October 29, 1966, approximately five hours before the accident. It appears from the evidence that even though the sign was reported down there was no effective procedure for getting a repair crew to the site to re-erect the "Stop" sign.

From the evidence it appears that the respondent had sufficient actual and constructive notice of the dangerous condition existing at the intersection in question, and we are of the opinion that the State was negligent in allowing this condition to exist, and in not having established an effective procedure to correct such emergency situations within a reasonable period of time.

This Court has taken notice of the opinion in *Shirar* vs. *State of Illinois,* #5124, filed November 9, 1965. In that case

the claimant contended that the failure of the State of Illinois to maintain a "Stop Ahead" warning sign approximately 1000 feet from the intersection in question constituted negligence and was the proximate cause of an accident. The evidence disclosed that there was a "Junction-Information" sign 500 feet from the intersection, a directional sign 300 feet from the intersection, and a "Stop" sign at the intersection. There was further testimony that the "Stop" sign at the intersection was visible from 500 to 1000 feet from the intersection. In the Shirar case the Court denied any recovery finding that claimant failed to prove that respondent was negligent, or that Respondent's negligence was the proximate cause of the accident. The Court stated that it appeared that the negligence of the driver of the automobile in which the claimant was riding was the proximate cause of the accident.

The Shirar case differs from the instant case in at least one important respect. In this case the sign that was down was the "Stop" sign at the intersection, rather than a "Stop Ahead" warning sign. In the Shirar case the Court pointed out that there were two warning signs up which should have warned the driver of any vehicle approaching the intersection, plus the fact that the "Stop" sign at the intersection was up and was clearly visible from a distance of 500 to 1000 feet. In this case the sign which was down and which the State failed to replace was the "Stop" sign at the intersection, rather than the "Stop Ahead" sign as in the Shirar case. It is the opinion of this Court that claimant's husband did not have adequate warning of the approaching intersection as did the driver of the automobile in the Shirar case.

We are of the opinion that the claimant has sustained the burden of proof that she and her husband, John M. Hoffman, were free from contributory negligence, and that the negligence of the respondent was the proximate cause of the accident.

An award is made to Patricia K. Hoffman, Special Administratrix of the Estate of John M. Hoffman, Jr., deceased, in the amount of $25,000.00. A further award is made to Patricia K. Hoffman for injuries sustained by her in the amount of $15,000.00.