Alera Thien, Appellee, v. City of Belleville, Appellant.

Term No. 47F3.

Opinion filed May 14, 1947.
Rehearing denied June 17, 1947. Released for publication June 17, 1947.

EUGENE H. WIDMAN, of Belleville, for appellant.

LINDAUER, LINDAUER & PESSIN, of Belleville, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

This is an appeal by the City of Belleville, hereinafter called "City" or "defendant" from a judgment in the amount of $7,500 in favor of the appellee, Alera Thien, hereinafter called "plaintiff," who, while walking in the sidewalk area (no sidewalk having been constructed) of a public street, fell and broke the tibia of her left leg.

The complaint made Items, Inc., the occupant of the building which, at the place of the accident, was adjacent to the sidewalk area, a party defendant. At the close of the plaintiff's evidence, a verdict was directed in its favor, and the case proceeded against the City of Belleville.

The complaint, which treated and described the sidewalk area as a "sidewalk" charged that it was the duty of the City "to keep said sidewalk in good and safe repair and condition, and to have due regard for the rights and safety of all persons lawfully and rightfully thereon"; that the City, "not regarding its duty in that behalf wrongfully, negligently and carelessly suffered and allowed said sidewalk to become and remain in an unsafe and dangerous condition, in that the portion of said sidewalk in front of and immedi-

ately adjacent to the main entrance of the plant of the said defendant, Items, Inc., was allowed to become and remain dark and unilluminated, and the surface thereof to be, become and remain rutted and coated with ice and hardpacked snow''; and that the plaintiff was in the exercise of due care; and that by reason of the premises plaintiff was injured.

The defendant, by its answer, denied these averments.

The accident herein involved occurred about 6:45 o'clock a. m. Central Standard War Time, on December 28, 1944, in front of Items, Inc., factory, 701 South Third street, in the City of Belleville, Illinois. The neighborhood is wholly industrial. There are three factories and a number of railroad tracks in the immediate vicinity.

South Third street is of concrete construction with concrete curbing. The sidewalk area—that is, the area between the curb and the property line—has never been improved. The estimate of the witnesses as to its width varied from six feet to ten feet. The city engineer said it was 10.15 feet in width. Plaintiff did not produce any evidence from which it could be inferred that the City had ever undertaken to construct a sidewalk in this area or otherwise improve it. Parallel to and a foot or so distant from the curb, there was a path about a foot to a foot and one half wide. It was on this path that plaintiff was walking when she fell to her injury. There was no evidence of any jurisdiction of any kind exercised by the City over this area. The city engineer testified this area was unpaved and unimproved, consisting of dirt, cinders and earth, with weeds on either side of the pathway in this area; that the City had at no time placed any brick, rocks, or foreign matter on the pathway or between the building and the curb line; and that the City had not in any respect touched the areaway where people walked. The witness, Sidney Rosenberg, secre-

tary treasurer of Items, Inc., testified he had been employed for several years by said company prior to December 28, 1944, the time of the accident in question, and that the City had done nothing to that area to cause a change in the topography or to cause any obstructions to be placed on the pathway.

About 20 feet north of the entrance to Items, Inc., there was a downspout, which was bolted to the side of the building. At the bottom of the downspout was a four-inch shoe which discharged the water onto the ground, from whence it flowed across the sidewalk areaway to the street. This water crossed the path. It had worn a slight depression—"a sort of shallow place"—and over a distance of 3½ feet along the path it gradually came down to a depth of two or three inches and then went back up.

Near this, a concrete or brick "coping," a little above the ground, and about four feet wide, projected about four feet from the building. This had been filled up to within two or three inches of the top. There was some evidence of a stub of a telephone pole near this coping. All witnesses agreed the path did not run over the coping or the pole but was clear of both of them.

For several days before December 28, 1944, the date of the accident, it had rained, sleeted and the temperature had stood at or below freezing. It had sleeted again during the night of December 27, 28. The fresh coat of sleet had frozen all over everything. The evidence is undisputed that the pathway above mentioned was (as with everything else) covered with a sheet of ice at the time of the accident.

The evidence given by the plaintiff, herself, showed that she had worked at Items, Inc. for 3½ years. That she was in the habit of walking on this pathway in going to and leaving her place of employment. She testified it was slick all the way from her home to the place where she fell, and that it took her 25 minutes to

walk four and one half blocks from her home to the place of the accident on the morning of December 28, 1944; that she had seen women holding onto each other for support as they walked down this path and as they walked toward the Items, Inc. building on the day previous to the accident; that at 6:45 a. m. on December 28, 1944, as she walked along the path toward the door, she fell and broke one of the bones of her left leg.

In her complaint, plaintiff charged she was within four feet of the door when she fell. In a written statement dated January 25, 1945, she said she had walked along the path to within four to six feet of the entrance. She admitted that when her deposition was taken on July 27, 1945, she had testified she fell at a point four to six feet from the door. After the fall, while she was lying on the ground, she thought she was from four to six feet from the door. On the trial, however, she said the fall occurred 20 feet north of the door, which is the place the path passes nearest to the hereinabove described downspout, coping and telephone pole stub.

As to the cause and manner of her fall, plaintiff testified that she stepped on something and turned over and fell; that she did not know what she stepped on; and that she was walking along normally as a person would normally walk, lifting one foot ahead and taking another step and lifting the other; and also stating that she was scooting her feet along very slowly; that there was no unevenness in the ice all along the pathway and that the something she stepped on was an unevenness in the ground which caused it to be a little higher in that place and the ice was over the something and she stepped on that and slipped and fell.

She admitted that when her deposition was taken she did not say anything about something sticking up and causing her to fall. Neither did she say anything about something sticking up in the written statement concerning the accident which she gave on January 12,

1945. In that statement she attributed the fall to "the slick footing of this path and on which no ashes or sand had been placed."

Plaintiff's witness, Klawonn, who had helped carry plaintiff into the building, testified she did not notice anything the plaintiff could have stumbled over, and that it was awful slippery.

In the course of the trial, plaintiff's witness Peters testified as to the condition of the path, the coping, telephone pole stub, etc. On cross-examination, it developed he had had no opportunity for several months before and until a month or so after December 28, 1944, to observe the path.

The City's motion to exclude his testimony was denied. Peters was also, over objection, permitted to testify concerning the downspout, no reference to which was made in the complaint. Plaintiff's witness Stroebel was permitted, over objection, to testify concerning the condition of the path in the summer and fall of 1944.

At the close of the evidence, the City's motion for a directed verdict was denied.

At the defendant's request, the court submitted three special interrogatories to the jury, all of which were answered in the negative. The City filed a motion for judgment notwithstanding the verdict and to set aside the special findings of the jury and for a new trial, all of which motions were denied.

The special interrogatories given by the court at the request of the defendant and the answers thereto being as follows:

"Was the icy and slippery condition of the place where plaintiff fell the same general and natural conditions existing throughout the City of Belleville? Answer: No.                              (A)   Given.

"Was the fall of the plaintiff Alera Thien proximately caused by the absence of illumination of the path along which she was then walking, by artificial lights?

Answer: No.                  (B)   Given.

"Was the fall of the plaintiff, Alera Thien, proximately caused by snow or ice accumulating upon the surface of the path along which she was then walking? Answer: No.               (C)   Given."

The errors relied upon for reversal, are as follows:

1. The verdict and each of said special findings marked A, B, and C, are contrary to the law and the evidence.

2. The court erred in denying defendant's motion to direct a verdict in its favor at the close of all of the evidence in the case.

3. The court erred in refusing to grant defendant's motion for judgment in its favor notwithstanding the verdict.

4. There is no sufficient or substantial evidence tending to support the verdict of the jury, or either of the special findings marked A, B, and C in favor of the plaintiff, Alera Thien, against the defendant, City of Belleville.

5. There is a material variance from the pleadings of the complaint and the proof, and for that reason defendant was taken by surprise.

We have examined the evidence in this case, and it shows conclusively that there was a coating of sleet and ice on the streets and sidewalks in the City of Belleville, and that the condition was general in the vicinity of said City at the time of the accident in question; that plaintiff's statement given about two weeks after her injury stated that her fall was due to slick footing on the path; and again on July 27, 1945, when her deposition was taken she testified that her fall was due to slipping on the ice and that there was no obstruction in the path; not a witness for plaintiff could say what, if anything, the plaintiff stepped on to cause her to fall; that the areaway upon which this

foot path was worn was unimproved; that it was in an industrial area and that the City had never attempted to pave or improve the sidewalk area between the building line and the curb.

Before the plaintiff could recover in this case the burden of proof was upon her to show that there was an obstruction in the pathway in question, and that it was of such magnitude to be dangerous; that the particular obstruction caused her to fall and that the obstruction was in the path for such a period of time that the City should have had reasonable notice of it being there, so that the City could have removed the same. The degree of care which a city is required to exercise to keep its streets and sidewalks in a reasonably safe condition varies according to the location, character and extent of the use to which they are put. No arbitrary rule can be laid down as to defects in highways or streets for which municipalities will be liable, or as to the degree of care required of the person injured. Municipal corporations are not insurers against accidents, and the only duty cast upon the city is that it shall maintain the respective portions of the street in reasonably safe condition for the purposes to which such portions of the street are devoted. It is only bound to use reasonable care to keep its streets reasonably safe for ordinary travel thereon by persons using due care and caution for their safety. (*Molway v. City of Chicago,* 239 Ill. 486; *Kohlhof v. City of Chicago,* 192 Ill. 249; *City of Salem v. Webster,* 192 Ill. 369.)

Municipal corporations cannot be held liable for every accident that occurs within their limits, but the defect must be such as could have been foreseen and avoided by ordinary care and prudence of the city authorities. The theory upon which plaintiff appellee predicated her case was that the City was liable for negligence in permitting ice to be upon the pathway she was traveling at the time of the accident, and for insufficient artificial lighting in the vicinity of the acci-

dent, and permitting the pathway upon which she was walking to become rutted and coated with ice and hard packed snow; and failing to spread salt, ashes, or like substances upon said icy and slippery surface; and then during the course of her trial she sought to show that her fall was caused by an obstruction of some kind in the pathway in which she was walking (no allegation of an obstruction of the pathway appearing in the complaint). Plaintiff would be unable to recover because of the icy condition of the areaway, as the icy condition of the streets, sidewalks, and areaways on the morning of December 28, 1944, were caused by general weather conditions. As to the claim that there was a defect or an obstruction in the pathway upon which the plaintiff was walking at the time of injury, it has been held that whether a defect in the street is caused by the act of a third person, or the failure of the city to repair in general, the city is not liable unless it had notice of the defect, or of such facts and circumstances as would by the exercise of reasonable diligence lead a prudent person to such knowledge (*City of Chicago v. Stearns*, 105 Ill. 554). It is not claimed that the City had any notice of any obstruction in the pathway. The evidence fails to show constructive notice. Generally it is a question for the jury whether a city has had notice of a defect in a street. Where the facts are undisputed and but one reasonable inference can be drawn from them, it then becomes a question of law for the court. (*Boender v. City of Harvey*, 251 Ill. 228.)

We are, therefore, of the opinion that the trial court was in error in not granting the motion of the defendant, the City of Belleville, for judgment notwithstanding the verdict, and the judgment of the trial court is hereby reversed, and it is ordered by this court that plaintiff pay costs.

*Judgment reversed.*

CULBERTSON and BARTLEY, JJ., concur.