(No. 4529-)

Lillian Kamin, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed September 25, 1953.*

Gariepy and Gariepy, Attorneys for Claimant.

Latham Castle, Attorney General; William H. Sumpter, Assistant Attorney General, for Respondent.

Wham, J.

This is an action brought by the claimant, Lillian Kamin, against the respondent, State of Illinois, to recover $2,500.00 in damages for personal injuries, which she sustained on August 26, 1952, when she fell from a nature path, or trail, into what is known as "French Canyon" in Starved Rock State Park, while on a hike conducted by a State employed nature guide.

She charges in her complaint filed herein that her fall and resulting injuries were caused by the instructions and directions of the guide, and contends in her brief and argument that respondent was negligent in constructing the path in an unsafe manner, failing to erect guard rails between the pathway and the edge of the canyon, and inviting her to use the path without warning her of the dangerous condition of the path and proximity of the canyon.

It is respondent's position that the only duty owed to claimant was to refrain from wilfully and wantonly injuring her; that, even if it was under a duty to use reasonable care toward claimant, it was guilty of no

negligence causing such injuries; that said injuries resulted from claimant's own lack of care, or, through the lack of care on the part of some third person over whom respondent had no control; and, that claimant assumed the obvious risks encountered on said hike.

The facts concerning the happening of the accident, as shown by the evidence, are as follows:

Claimant, Lillian Kamin, forty-five years of age, and her husband were on vacation. They were staying at the Starved Rock Lodge, located in Starved Rock State Park, Utica, Illinois, during three days in August, 1952, where they had stayed on previous occasions. At about 10:15 A.M., on August 26, claimant, accompanied by her husband, and some 35 to 40 other people, including Al Shea, a guide employed by the respondent at Starved Rock State Park, started a hiking tour to French Canyon in said park. Claimant was dressed in sport clothes, including low heeled shoes. The day was warm and clear, the trails were dry, and the hiking conditions were good. The group, including claimant, formed a single file behind the guide, and followed him along the trail. After walking for some 15 minutes, a distance of about a quarter of a mile (a half of said distance on a narrow sandstone path about two feet wide), the group reached a point near the brink, or edge, of French Canyon. Claimant testified that she was walking on the stone path directly behind her husband, and approximately 15 or 16 persons back from Mr. Shea, when he fell into the canyon, and, that the path upon which she was walking then gave way, causing her to also fall into the canyon some 12 to 15 feet below the path. She further testified that her husband was not touching her, and did not pull her down, but that "The earth gave way and we fell". She identified claimant's exhibit No.

8, a photograph taken by her son a day or so after the occurrence in question, as a correct representation of the path at the point from which she fell. Other photographs of the path were admitted in evidence, and attached to respondent's exhibit No. A, being a part of the Departmental Report. Claimant's husband was not injured, and did not testify.

The undisputed facts show that there was no guard rail at the edge of the canyon. The Departmental Report states that the canyon was marked clearly, and posted along the trail 20 feet before reaching the point of the accident. It further states that the condition of the trail at the point where claimant fell is the same as it was the day of the accident, and that conducted hiking tours are taken over the same trail every week end.

The photographs, admitted in evidence, indicate that this is a natural unimproved nature trail, or path, through a wooded rocky area.

Claimant testified that, prior to starting on the hike, it was announced in the lodge that Al Shea would guide the group on a new route to French Canyon; that he told the group to follow him down the path, and to stay on the path. She further stated that she had no fault to find with Mr. Shea as an individual, and stated that they were not being guided too fast.

The only evidence offered by respondent concerning the happening of the accident and description of the trail is the Departmental Report, which under Rule 16 of the Rules of the Court of Claims, is prima facie evidence of the facts set forth therein.

The facts, contained in said Report, conflict in certain respects with claimant's testimony. The guide, Al Shea, stated therein that after the group had proceeded down seven natural sandstone steps, which led

to the trail and the stream-bed of the canyon, and were waiting for the last two couples on the hiking tour (claimant, her husband, and another couple), he glanced back, and saw claimant's husband standing on the narrow trail at the bottom of the steps with his back to the canyon, and assisting claimant down the steps. As he, the guide, conversed with the members of the party, he heard the snapping of twigs and branches at the point of the accident, and, looking back toward the two couples, saw claimant's husband sliding over the edge of the canyon, and claimant actually flying through the air, as though she had been pulled or pushed by force.

The condition of the sandstone steps is described by the guide in this portion of the Report as being "not wet . . . but are hazardous due to the loose sand that wears off of the sandstone". These steps are further described as "eroded naturally in sandstone".

In the report of Mr. John A. Heitmann, custodian of Starved Rock State Park, to the State Superintendent of Parks, which was made a part of the Departmental Report, it is stated that claimant's husband was assisting her down some natural stone steps on the trail above French Canyon at a point where it was narrow, that he stepped back from the trail into soft dirt at the edge of the canyon, lost his balance, and fell, pulling claimant with him to the bed of the canyon.

In the Accident and First Aid Report, also signed by John A. Heitmann, and incorporated in the Departmental Report, under the portion thereof headed "State in Patient's Own Words Where and How Accident Occurred", it is stated as follows: "Mrs. Kamin slipped on the trail, while receiving assistance from her husband,

causing him to lose his balance, and both parties fell a distance of 10'''.

Claimant objects to consideration being given to the report of the custodian, Heitmann, to the Superintendent of Parks, for the reason that it is based solely upon the report of the guide, and contains conclusions, in addition to the facts given him. We agree with claimant, and will not consider that portion of the report, which is based on conclusions, rather than facts. We will, however, consider the report of the guide, inasmuch as it contains facts, rather than conclusions.

Claimant also objects to consideration being given to the facts set forth in the Accident and First Aid Report on the grounds that it conflicts with the custodian's report to the Superintendent of Parks. We do not consider this to be a well founded objection. The First Aid Report purports to represent claimant's own version of the accident at the time it was made, and whether or not it conflicts with respondent's version of the accident is immaterial. Such First Aid Report will be considered by this Court.

Respondent contends that claimant was, at the time and place of her injury, a mere licensee on respondent's property, and that respondent owed her no duty except to refrain from wilfully and wantonly injuring her. Respondent bases its contention on the rule of law that distinguishes a licensee and a business visitor in regard to privately owned property. We find no quarrel with this distinction in the cases cited, but do not consider such to be the rule under the facts presented in this case. Here the State of Illinois was operating a public nature park for the benefit of the people of the State. The park and trails were open for use by all persons, including the claimant, whether or not they

were paying guests at Starved Rock Lodge. The State of Illinois employed the nature guide to conduct tours and hikes through the park, including the hike in which claimant participated.

The courts of Illinois in actions for injuries to patrons of public parks, owned by municipalities, have denied recovery for negligence on the part of park employees upon the doctrine of governmental immunity. *Lythell* vs. *City of Waverly*, 335 Ill. App. 397. The same theory has been followed by this Court in cases involving claims for injuries to patrons of State parks. *Berg* vs. *State of Illinois*, 12 C.C.R. 79. The 1945 Court of Claims Act, however, has abolished this defense as to suits against the State of Illinois.

Those States, which have refused to apply the doctrine of governmental immunity in actions against municipalities for injuries sustained in public parks, have required such municipalities to exercise ordinary and reasonable care toward the public using such parks. 29 A.L.R. 868, 63 *C.J.S.*, *Municipal Corporations*, Sec. 907 at 319 and 320.

There have been several cases involving suits for personal injuries against the State of New York for injuries sustained in its parks, and the New York courts have held that, although the State is not an insurer of the safety of those who make use of the park facilities, the State must exercise reasonable care in the maintenance of its parks, and in supervising the use thereof by the public. *Mitchell* vs. *State*, 85 N.Y.S. 2 (d) 80; *Pope* vs. *State*, 96 N.Y.S. 708. And, it has been held to be so, irrespective of whether a fee was charged the public. *Smyke* vs. *State*, 117 N.Y.S. 2 (d) 163. This rule appears to us to be just and reasonable, and it is our holding that in the present case the respondent owed

the claimant the duty to exercise, through its agent and servant, Al Shea, the guide, reasonable care in conducting the hike to French Canyon, and through its agents and servants generally, the duty to exercise reasonable care in establishing and maintaining the path, or trail, over which the conducted hiking tour was taken under the direction of the guide.

In determining whether or not the State of Illinois has failed to exercise reasonable care in the establishment and maintenance of the pathway, and, whether or not in the exercise of reasonable care it should have erected a guard rail at the place of the accident, as contended by claimant, we must consider the location, character, use and purpose of this path and portion of the park. Obviously, from the testimony and the photographs admitted in evidence, this pathway was established as a trail for those interested in hiking through rough country in a natural state, and was not intended to be used for ordinary pedestrian travel, as is a sidewalk in a city.

Although there might well be certain sidewalks in Starved Rock State Park, the use of which are designed for ordinary pedestrian travel, and which the State might well be required to maintain in the same manner and condition as a city is required to maintain its sidewalks, the nature path herein involved is not one of these.

The rule governing the establishment and maintenance even of city sidewalks is one that varies with the location, character and extent of the use to which they are put. In *Thien* vs. *City of Belleville*, 331 Ill. App. 337, the court sets forth the following rule at page 345:

". . . .The degree of care which a city is required to exercise to keep its streets and sidewalks in a reasonably safe condition varies according to the location, character and extent of the use to which they are put. No arbitrary rule can be laid down as to defects in highways or streets for which municipalities will be liable, or as to the degree of care required of the person injured."

In the case of *Boender* vs. *City of Harvey*, 251 Ill. 228, at pages 230 and 231, the court stated:

". . . .Municipal corporations are not insurers against accidents. The object to be secured is reasonable safety for travel, considering *the amount* and *kind of travel* which *may fairly be expected upon the particular road or street. A highway in the country need not be of the same character as a street in a large city.* (*Molway* vs. *City of Chicago,* 239 Ill. 486.). . . .only duty cast upon the city is that it shall maintain the respective portions of the street in a reasonably safe condition for the purposes to which such portions of the street are devoted."

Therefore, what might be considered a defective or negligently maintained, constructed, or established walk, or path, in one case, would not be so in another.

In regard to claimant's contention that the path upon which she was walking gave way, or subsided, causing her to fall, we note that from 15 to 31 persons, in addition to the guide, had walked upon this path immediately in front of claimant and her husband without the path giving way. Since the date of the accident, the path is still used for conducted hiking tours, and is in the same condition as of the date of the accident. There is no evidence in the record concerning the condition or physical makeup of this path, which would give a reasonably prudent person cause to believe that it might give way, or subside. There is no evidence that respondent had either actual or constructive notice that the path would give way. The testimony of claimant to the effect that it did happen, does not in itself establish negligence.

The State is no more an insurer against accidents arising out of the use of its nature paths, than is a city of its sidewalks. The law of Illinois is clear that, before

a municipality can be held liable for injuries caused by defective conditions of a sidewalk, it is necessary that there be some evidence showing, or tending to show, that the city had actual or constructive notice of the alleged unsafe condition. *Arnett* vs. *City of Roodhouse*, 330 Ill. App. 524 at 527 and 528; *Boender* vs. *City of Harvey*, 251 Ill. 228 at 231 and 232; *O'Donoughue* vs. *City of Chicago*, 167 Ill. App. 349 at 352 and 353; *Coffin* vs. *City of Chicago*, 254 Ill. App. 29; *City of Nokomis* vs. *Farley*, 113 Ill. App. 161 at 163; *Karczenska* vs. *City of Chicago*, 239 Ill. 483 at 485; *Powell* vs. *Village of Bowen*, 92 Ill. App. 453 at 454 and 455. And, the burden of proving such actual or constructive notice, and the existence of such defect, is upon the claimant. *Thien* vs. *City of Belleville*, 331 Ill. App. 337 at 345. In *Dominic Di Orio., Et Al* vs. *State of Illinois*, 20 C.C.R. 53, this Court has applied these same rules of law to suits involving defects in highways against the State.

Therefore, even taking the evidence in this case most favorably to the claimant in regard to her contention that the path gave way, or subsided, we find that there is no showing that the respondent was negligent in this regard, due to the failure of claimant to prove such actual or constructive notice to respondent.

Claimant contends that the State was negligent in failing to construct guard rails at the place where the accident occurred, and in failing to warn her of the dangerous condition of the trail and proximity of the canyon. It is clear from the evidence that claimant knew there were no guard rails at that point, and was aware of the proximity of the canyon.

The Departmental Report establishes that the canyon was clearly marked, and posted beside the trail 20

feet before reaching the point of the accident. Claimant does not deny this fact, stating only that there were no danger signs along the path. It is apparent from the photographs of the approach to the canyon from above, attached to and a part of the Departmental Report, that the lack of guard rails, and the proximity and location of the canyon were readily apparent to anyone proceeding along the trail, if they had looked. In her reply brief, claimant concedes that the canyon adjoining the pathway was visible to her.

Claimant should have foreseen that, if one should, for any reason, fall at the particular place involved herein, such person would in all likelihood fall to the bottom of the canyon. We hold that claimant, in hiking along this rough nature path for recreation, assumed the risks inherent in the sport of hiking as a whole, and those risks that were obvious to her, including the lack of guard rails, and the proximity of the canyon to the trail.

Professor Prosser in his work on *Torts* states at pages 383 and 384:

"In by far the greater number of cases, the consent to assume the risk is not expressed, but is found to be implied from the conduct of the plaintiff under the circumstances. By entering freely and voluntarily into any relation or situation which presents obvious danger, the plaintiff may be taken to accept it, and to agree that he will look out for himself, and relieve the defendant of responsibility. . . . . One who enters upon the premises of another, even as a business visitor, assumes the danger of all known or obvious conditions which he finds there. The consent is found in going ahead with full knowledge of the risk."

In Section 340, *Restatement of the Law of Torts*, Vol. 2, page 927, it is provided as follows:

"A possessor of land is not subject to liability to his licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by any dangerous condition thereon, whether natural or artificial, if they know of the condition and realize the risk involved therein."

This doctrine of assumption of the risk is recognized and followed by the courts of Illinois. *Weber* vs. *City Water Company of East St. Louis and Granite City*, 206 Ill. App. 417 at 422 and 424; *Campion* vs. *Chicago Landscape Company*, 295 Ill. App. 225 at 234 and 242.

The above rule, set forth in the *Restatement of Torts*, has been specifically applied in *Griffin* vs. *State*, 295 N.Y.S. 304, in which case the facts were similar to those involved herein. A patron of a State park fell into a mountain gorge from a lookout balcony, after descending several unguarded, rough, and irregular steps leading to the balcony. There was no protecting guard rail at the edge of the balcony, or steps. This condition was clearly visible to the deceased. The court in denying a claim for wrongful death against the State of New York cited Section 340, *Restatement of Torts*, and concluded at page 309 that:

". . . .The failure of the State, if there was a failure, to provide for greater protection against the precipitous bank of the gorge, was directly before her eyes as she proceeded to the point of danger. This was true as much as if she had been coming down the trackless side of the mountain. She voluntarily exposed herself to whatever danger was there, whatever the cause. All of the evidence in the case leads to a single conclusion — she did what she did knowingly, and did this as a matter of choice."

Claimant also contends in her brief that the evidence in the Departmental Report to the effect that the natural sandstone steps "were not wet, but are hazardous due to the loose sand that wears off of the sandstone" constituted negligence on the part of the State for maintaining a dangerous place, where claimant was invited to walk. This evidence only shows that the steps were undergoing erosion on the walking surface thereof, and indicates no condition, which would cause a subsidence, or giving away of the pathway. If claimant slipped, or lost her balance on this eroded step

by reason of the existence of the loose sand upon the step, as is intimated by claimant's brief, in alternative to her position that the trail actually subsided, and gave way, we still see no basis for liability. The condition of the surface of the steps was as visible to claimant, as it was to the guide, Al Shea, and the other members of the hiking party. She testified that she had been walking upon the stone path for some distance, and it was "sort of stone, little tiny stones". This was an obvious condition, and the risk of slipping, or losing one's balance in walking upon the steps and path could as easily have been foreseen by claimant as by respondent.

In the case of *Murray* vs. *Bedell Co.*, 256 Ill. App. 247, a business invitee slipped and fell in the vestibule of a store by reason of mud and water creating a slippery condition. The Appellate Court, in reversing a verdict in favor of the plaintiff, said at pages 249-50-51:

" 'Owners or lessees of stores, office buildings, banks, hotels, theaters, or other buildings where the public is invited to come on business or pleasure, are not insurers against all forms of accidents that may happen to any who come.' See also *Dudley* vs. *Abraham*, 107 N.Y.S. 97.

In the case at bar the plaintiff was as well apprised of the condition existing in the vestibule as the defendant, and should be held to as high a degree of care for her own safety as would be required of the defendant."

The Appellate Court held the trial court should have directed a verdict in favor of the defendant.

The New York Court in *Duncan* vs. *State*, 111 N.Y.S. 2 (d) 590, 279 Appellate Division 970, in denying a claim for injuries where claimant, after having safely descended the stairway in a State Park, stepped on a loose rock, which caused her to fall, stated that, since she was aware of the nature of the terrain, and the risks, if any, were apparent, the State was not liable.

In regard to claimant's contention that Al Shea, the guide, was negligent, it is to be noted that nowhere in the record does there appear any evidence wherein claimant complains of any act or omission on the part of the guide. In claimant's brief and argument, however, she contends that the guide did not warn the members of the hiking party and the claimant of any dangerous conditions, or of the proximity of the trail to the canyon, where she fell. It clearly was not negligence on the part of Shea to fail to warn claimant that the trail might subside. He had no more knowledge of this contingency than did claimant. There was likewise no reason for him to warn claimant of the absence of any guard rail, or to point out that the canyon adjoined the trail. These facts were obvious to anyone proceeding on the tour, including claimant. It was not negligence on the part of Mr. Shea to fail to call her attention to the loose sand on the eroded sandstone steps, and the small stones upon the path. These conditions too were obvious to claimant. The guide was no more an insurer of claimant's safety, than was the State. He followed a regular trail, and, it is immaterial whether it was the first conducted tour taken over the trail. It is obvious from claimant's exhibit No. 8, a photograph taken a few days after the accident, of the path from which she fell, and from remarks in the record of claimant's counsel, that this was a "clean cut path". If claimant is not entitled to recover from respondent by reason of the condition of said path, then certainly the guide was not negligent in directing the tour over this path.

Therefore, considering the evidence in this case most favorable to claimant, we find that she has failed to establish her right to recover. In addition to this,

the evidence as a whole is conflicting in certain material respects noted earlier in this opinion. The conflict of evidence, together with the natural and reasonable inferences to be drawn from all the facts and circumstances involved, leads us to the conclusion that claimant has not borne the burden of proving by the greater weight of the evidence that the accident occurred in the manner relied on by her. Since we have held that she is not entitled to recover, even considering the evidence most favorable to claimant, we will not extend the opinion further by discussing the weight of the evidence, or considering the question of damages. For the reasons hereinabove stated, the claim is denied.