(No. 73-CC-0276— ▆▆▆▆▆▆▆▆)

ELAINE PERLMAN and PAUL E. PERLMAN, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 13, 1979.*

FISCHEL, KAHN, WEINBERG, BRUSSLIN, CHAPMAN & ROIN (DAN R. ROIN, of counsel), for Claimant.

WILLIAM J. SCOTT, Attorney General (ZEAMORE A. ADER, Special Assistant Attorney General, of counsel), for Respondent.

POCH, J.

Claimant, Elaine Perlman, has brought this action seeking to recover for personal injuries she sustained at the White Pines Forest State Park, (hereafter the park) in Ogle County, Illinois. Her husband, Paul E. Perlman, has brought an action for loss of consortium arising from the same incident.

The incident which gives use to this action occurred on July 10, 1972. Claimants allege that Elaine Perlman attempted to walk along a foot trail in the park, which had been established and maintained by the State, and that the State knew, or should have known, that the trail was unsafe and dangerous. It is charged that the State failed to post a warning of the dangerous condition of the trail. It is further alleged that the trail collapsed, or otherwise caused Claimant to fall to the base of a cliff below the trail, as a result of which Claimant sustained serious and permanent injury.

The extensive record in this case reveals that on July 10, 1972, Claimant drove to the park with Dennis Tagrin, Etty Tanenbaum, Lawrence Tagrin and her daughter,

Judith Perlman. The party entered the park through an automobile entrance, parked in a designated parking area, and began walking southward on a trail which rose gently up a hill.

At the top of the hill the party headed eastward along the Razorback Trail. Lower ground was to the north of the party and a series of small trails, referred to as "finger trails" led northward from the Razorback Trail.

The party continued along the Razorback Trail in an easterly direction. The series of smaller, intersecting paths which ran in a northerly direction lead to a lower trail. Below that lower trail there was foliage. Elaine Perlman testified that because of the dense foliage to the north, it was not possible to see that there was a drop-off below the lower trail. Respondent introduced evidence that the drop-off from the lower trail was visible.

The party proceeded from the main trail along one of the intersecting paths to the lower trail. The lower trail was two and one-half to three feet wide. There was no foliage on the trail itself. When the party reached the lower trail, the higher ground was to its right, with heavy foliage to its left, as they again proceeded eastward.

As Elaine Perlman walked along the lower trail, it suddenly crumbled under her feet. Claimant slid to the ground below, a distance of approximately 30 to 40 feet.

Charles A. Ballard was the head ranger at the park on the date of the accident. He was responsible for the maintenance and care of all trails. He testified that on July 10, 1972, there was no sign at the automobile entrance to the park which advised visitors to stop at the ranger station, and no sign indicating that maps of the park were available at the station. There were also no

signs in the vicinity of the station advising that there were dangerous areas in the park.

Maps were available at the ranger station, and the path from which Elaine Perlman fell was not designated as an "official trail" on these maps. Ballard said that "official trails" in the park were five feet wide, although they occasionally narrowed to three feet. He said there were other pathways used by hikers in the park which were generally under three feet in width. He said these were not considered "official trails" but there were no signs erected and no literature available which instructed hikers to stay on "official trails."

There was no maintenance provided to trails which were not considered "official trails" and no inspection was made of any but the "official trails."

The only sign in the park indicating the existence of a dangerous area was a sign reading "Trail Closed" which was located at the eastern end of the Razorback Trail, where it intersected a pathway which ran to the north. The sign was 500 to 800 feet east of the point where Elaine Perlman and her party entered the Razorback Trail.

Ballard said that as many as 20 secondary trails, or "pathways" ran off the Razorback Trail. He said that the "Trail Closed" sign was not maintained by his staff, and he did not know who erected it.

Both Ballard and the assistant ranger, David Stevens, testified that they never saw people walking on the path; never knew of anyone falling from the path; that in their years at the park they had no knowledge of any defect in the path in question. Other testimony established that the lower trail, from which Claimant fell, was frequented by visitors to the park. Elaine Perlman sustained multiple and serious injuries as a result of the fall. She was taken

from the park to Dixon Hospital, where exploratory surgery was performed. She was thereafter transferred to Passavant Hospital in Chicago, where she underwent surgery several times.

Evidence was introduced that as a result of her injuries, and medicines and treatment given her, her kidney ceased to function shortly after the accident. As a result Elaine Perlman has received dialysis since shortly after the incident, and has been unable to work or maintain her household.

The State of Illinois is not an insurer and before the Respondent can be liable for Claimant's injury it must be shown by the preponderance or the greater weight of evidence that a dangerous and defective condition existed on the path and that the Respondent knew or should have known of said defective and dangerous condition. There is nothing in the evidence or record which would give a reasonably prudent person cause to believe that the ledge in question might give way or subside. The Court feels that before the State can be liable for an action the State must have actual or constructive notice of the dangerous condition. *Finn v. State of Illinois*, 24 Ill. Ct. Cl. 177; *Stedman v. State of Illinois*, 22 Ill. Ct. Cl. 446; *Kamin v. State of Illinois*, 21 Ill. Ct. Cl. 467; *Weygandt v. State of Illinois*, 22 Ill. Ct. Cl. 478.

Claimants assert that the facts of this case are identical to those in *Hansen v. State*, 24 Ill. Ct. Cl. 103, where an award was made after a hiker had fallen from a path in an Illinois State Park. However, we find that there are important differences between *Hansen* and the instant case. In *Hansen*, the Claimant was on an established trail. In the case at bar, Claimant climbed down from the Razorback Trail in rough, broken ground, to the territory below.

In *Hansen*, the Court did not find the State negligent in failing to warn of the possibility that the trail might crumble under Claimant's feet. Rather, the Court held that the State failed to post a sign warning that the trail from which Hansen fell adjoined a deep gorge. The gorge in that case was not visible from the trail. Here, Claimant must have known that she was on a trail which adjoined a gorge, as the foliage was not so thick that she could not see the valley below as she walked along the Razorback Trail.

Here, the danger must have been obvious to Claimant, as opposed to the situation in *Hansen* where the gorge was hidden from the trail.

Further, we find that the Claimant was not in the exercise of due care for her own safety and well being. It appears that the trail from which she fell was not a trail for visitors, but rather, was an animal trail, and we find that the Claimant assumed the risk of the trail when she voluntarily left Razorback Trail for the lower trail. See, *Kamin v. State*, 21 Ill. Ct. Cl. 467, where this Court said:

"We hold that Claimant, in hiking along this rough nature path for recreation, assumed the risks inherent in the sport of hiking as a whole, and those risks that were obvious to her, including the lack of guardrails, and the proximity of the canyon to the trail."

For the foregoing reasons, this claim is hereby denied.