(No. 93-CC-0849 

ORAL F. GOWER, Claimant, *v.* THE STATE OF ILLINOIS,
Respondent.

*Opinion filed April 12, 1994.*

ORAL F. GOWER, *pro se*, for Claimant.

ROLAND W. BURRIS, Attorney General (LAWRENCE
C. RIPPE, Assistant Attorney General, of counsel), for Respondent.

OPINION

FREDERICK, J.

Claimant, Oral F. Gower, seeks judgment against Respondent, State of Illinois, in the sum of $1,100 for damages done to Claimant's Ford F-150 pickup truck when a limb fell from a tree and struck his truck at Ft. Massac State Park on October 4, 1992. Claimant's complaint alleges that the limb from the tree fell on his pickup truck "purely and totally" as a result of negligence on the part of Respondent. Claimant contends that many

trees in the park had been chosen to be cut for many months and had been marked with red paint on the trunks. Claimant alleged that dead limbs had been falling from the trees without wind blowing or any other such circumstances. Claimant's complaint is informal and raises many issues regarding allegations of improper care or maintenance at Illinois State parks experienced by Claimant.

At the hearing, Claimant testified that on the date in question, he and his wife pulled into the park, camped and that it was almost dark. There was no wind. Claimant testified that the next thing Claimant knew was that he "heard a boom" and a big tree limb fell down and hit the hood of his truck bending it and bending the cab and the "knickknack" on the side of the door and on the windshield visor. A dent was left in the hood.

Claimant described the facility as a government campground operated by Respondent, State of Illinois. People are invited to bring their vehicles and trailers to the campground and make use of it and a fee is charged. Claimant and his wife had paid the fee.

Claimant testified that a State employee, being the hostess of the campground, was present when the accident happened. Claimant testified that the tree in question had been "bad for a long time." After the accident happened, State employees cut the tree down.

Claimant testified that he was aware of the condition of the trees generally at the campground before the incident happened. Claimant stated that there were limbs falling down out of the trees all the time. Claimant testified that prior to the incident in question, oak limbs on the back side of the campground were falling all the time. Claimant indicated he was aware of that fact before the

incident and never camped on that side. Claimant stated that he became aware of the condition on the other side because he walked around the campground all the time.

Prior to the accident, Claimant had not noticed this particular tree which caused the damage to his truck.

After the limb fell, he observed the limb and the tree it fell from. Claimant stated that the limb that hit his truck was about five inches in diameter and about five feet long. After the incident, Claimant observed the condition of the tree as being bad and that the tree had dead limbs on it.

Claimant's truck was parked in an area that was reserved for parking vehicles that are attached to trailers and that use the facility.

Claimant's position is that because the trees were obviously holding dead limbs that might cause damage as they fell, that the Respondent was negligent in the maintenance of those trees and in the maintenance of the camping facility because they were allowed to create a hazardous condition in their uncorrected state. Claimant reiterated that on the day of this occurrence, the sun was shining, it was warm, and there was no wind. The limb apparently broke off of the tree because of its own weight and there was nothing to cause the limb to break.

Claimant did not have his truck repaired. However, the repair estimates were admitted without objection by the attorney for Respondent. Neither estimate was totaled, but it appears that the estimate from Marion Ford-Mercury was in the amount of $1,086.20 and from Hopes Auto Body Repair in the sum of $1,109.73.

On cross-examination, Claimant testified that he had camped at Ft. Massac quite often. When Claimant arrived

at the campground on October 4, 1992, he believed he was camping in an area of the park that was safe. Claimant had not inspected the area where he was camping to see if there was anything that appeared to be dangerous or a problem. Claimant testified that the tree that was involved in this case was "marked" with a red dot about three or four feet from the ground on the trunk.

Claimant testified that prior to this incident, he had talked to park rangers about trees in the vicinity being a danger.

Ronald Coram was called as a witness for Respondent. Mr. Coram is employed by the Illinois Department of Conservation at Ft. Massac State Park where he had worked for approximately four years. Mr. Coram is a site technician who was working at the park on October 4, 1992, in site security. He made regular rounds on an hourly basis and he testified that in the camping area where the incident occurred there were only a few small trees. There were not many big trees left in that campground because the area had been replanted. Mr. Coram was advised of the damage to Claimant's truck and he observed the damage. Mr. Coram described the dead limb he observed as being five or six inches in diameter and eight to ten feet long. The tree branch which struck Claimant's vehicle came from a persimmon tree. The persimmon tree had dead limbs at the top but was mostly a live tree.

Mr. Coram also testified that he had seen Claimant's truck prior to this incident and the truck was in good repair. Mr. Coram confirmed that on the evening of this incident, conditions of weather were clear, dark and there was no noticeable wind that he knew of. The tree in question had been removed since the incident.

Mr. Coram testified that although he was through that area frequently in trips around the campground, he was not aware that there was a problem with falling limbs from trees at the time of the incident.

Terry Johnson was also called by Respondent as a witness. Johnson was an employee of the Department of Conservation at Ft. Massac State Park as the site superintendent. Mr. Johnson testified that the Department of Conservation had a program at Ft. Massac of identifying and removing dead trees that were located in the park. Such a program existed at the time of this incident. Mr. Johnson described the program as policy and procedure of the Illinois Department of Conservation consisting of marking trees, getting appropriate sign-offs, and then cutting the trees. There is no particular time when trees are marked or cut, but at Ft. Massac an attempt was made to mark the trees in August, September and October while the leaves were on. Normally after encampment in October, the staff had the time to cut the trees down. Johnson testified that much depends on when they can get appropriate "sign-offs." The "sign-offs" are sent to every biologist in the region, the regional office for regional review, and then sent to Springfield for review. Mr. Johnson testified that the paperwork is back in a relatively short period of time on most occasions. Mr. Johnson said they could not cut down an individual tree any time they felt like it because they have to obtain appropriate permission to take that action except on occasions where there is a storm or other unusual circumstances that allow park employees more options than what they have in normal circumstances.

Mr. Johnson testified that when trees are marked for identification, they are marked with an orange dot and they are also numbered. Different colors are used for different

years. Johnson examined the tree involved in the incident in question and found that the tree had not been marked in any way. If the tree had been marked, it would have had an orange dot and a number. Mr. Johnson further testified that there had been no complaints about limbs falling from trees in the area where this incident occurred.

The tree at issue in this case was removed after the incident because Johnson found that it was obviously a dying tree and was too close to the pad for safety's sake. The tree was marked and placed on the list at the last minute and subsequently removed.

On cross-examination by Claimant, Mr. Johnson explained that the tree in question was marked after the incident. Other specialists come and actually look at the tree prior to the time that it can be removed, which was probably mid to late November. The trees may be examined by biologists, natural heritage, wild life biologists, and foresters, all of whom have to sign off. Appropriate sign-offs were obtained with respect to the tree in question and it was removed.

The State of Illinois owes a duty to the public to exercise reasonable care in establishing, maintaining and supervising its parks. (*Kamin v. State* (1953), 21 Ill. Ct. Cl. 467.) In *Kamin, supra*, the Court recognized this rule, but denied the claim of a person using a hiking trail who fell from the trail into a canyon when it was conceded that the canyon was plainly visible, and that Claimant had assumed the risks inherent in the sport of hiking, particularly where the risks were obvious and the absence of guardrails in proximity to a dangerous portion of the path could be seen.

In *Damermuth v. State* (1966), 25 Ill. Ct. Cl. 353, this Court again recognized the duty of the State to members

of the general public to exercise ordinary care to protect them from harm in a State park. In *Damermuth* the Claimant fell into a concrete drainage culvert that was not protected and was in an area people were known to frequent after dark. The Court stated as follows:

"* * * although the State is not an insurer of the safety of those who make use of the park facilities, the State must exercise reasonable care in the maintenance of its parks, and in supervising the use thereof by the public."

In *Wightman v. State* (1978), 32 Ill. Ct. Cl. 546, this Court held that visitors to State parks are invitees to whom the State owes a duty of reasonable care in maintaining the premises. Once again, this was a walkway accident where the claimant had tripped over a metal divider supporting two paved areas. The Court stated, "this Court has held that the State of Illinois is not an insurer of safety of persons who visit its parks and recreation areas." (32 Ill. Ct. Cl. 546, 547.) In *Pearlman v. State* (1979), 33 Ill. Ct. Cl. 28, 31, this Court again reiterated that,

"The State of Illinois is not an insurer and before the Respondent can be liable for Claimant's injury it must be shown by the preponderance or the greater weight of the evidence that a dangerous and defective condition existed * * * and that the Respondent knew or should have known of said defective and dangerous condition."

Notice to Respondent can be either actual or constructive. (*Weygandt v. State*, 22 Ill. Ct. Cl. 478; *Hansen v. State* (1981), 24 Ill. Ct. Cl. 103; *Baker v. State* (1981), 35 Ill. Ct. Cl. 104.) In *Noonen v. State* (1983), 36 Ill. Ct. Cl. 200, a visitor to a State park was bitten by a dog chained to a tree. This Court denied recovery because it was not shown that Respondent had either actual or constructive knowledge of a dangerous condition created by the dog chained to the tree.

Recovery was allowed in *Stewart v. State* (1985), 38 Ill. Ct. Cl. 200 when a State park visitor was injured by a defective sliding board. This Court restated the principal

that a governmental entity which extends an invitation to the public to make use of its facilities for educational or recreational purposes, owed a duty of reasonable and ordinary care against known or foreseeable danger. This Court held that the Claimant had been injured by a defect which was open to discovery upon casual inspection. Accordingly, Claimant's claim was allowed.

In *Lyons v. State* (1987), 39 Ill. Ct. Cl. 192, a park visitor was injured when her foot became caught in a hole on a platform near a wooden stairway at Blackhawk State Park in Rock Island. Recovery was disallowed, this Court referred to the following:

(a) The defect complained of was minor and would not have been such as to impart constructive notice.

(b) "The Respondent is not an insurer against accidents occurring to visitors to park facilities."

(c) Park employees made routine inspections prior to the incident.

(d) Invitees, such as the Claimant, assume normal or obvious risks attendant to the use of the premises, citing *Lindberg v. State* (1954), 22 Ill. Ct. Cl. 29.

(e) The State cannot be expected to remove all risks of accidents which may occur in the absence of negligence. There are some risks inherent in hiking.

In this case, the tree from which the dead limb fell was located near an area where users of Ft. Massac Park camping ground were invited to park their vehicles and trailers. Some of the limbs on the tree were dead and most were alive. Respondent's agents had no actual notice of a dangerous condition other than may have been imparted by observing that some of the limbs in the tree were dead.

The evidence shows that there was security on this site that made regular patrols for the purpose of protecting invitees making use of the park premises. The evidence clearly demonstrates that it was the policy of Respondent to remove trees that were dead or dying after receiving "sign-off" permission from a variety of state agencies and authorities.

Claimant does not contend that the condition of the tree was any less apparent to Claimant than it would have been to any park employee. Also, it seems reasonable to conclude that the presence of trees adjoining and in the area of camping locations was a desirable and expected condition which campers seek out for the purpose of adding to the recreational pleasure to be enjoyed by users of the facility. Indeed, Claimant readily acknowledges that Claimant was aware that limbs can fall from trees. Claimant testified that in another area of this particular camping ground, the falling of limbs from trees was a problem of which the Claimant was aware.

Does Respondent, State of Illinois, have an obligation to remove all trees from the immediate vicinity of camping locations where the trees evidence any dead limbs or branches which could constitute a hazard to those using the camping sites if they should happen to fall from the tree at the wrong time? The answer to this question is difficult and important. The practical ramifications of defining the duty of Respondent State to include this responsibility could be said to have far-reaching effects on the maintenance of state camping facilities.

There was no evidence introduced into the record whether there were camping sites available to the Claimant that were not closely proximate to trees.

This Court is of the opinion that campers using

camping sites adjacent to trees must be said to assume some risk associated with placing their property and their persons beneath the limbs of trees. At least some risk could be said to be incurred by placing one's property or person beneath any tree for the reason that some material or branches could fall spontaneously or be caused to fall by an unexpected change in weather or even through the activities of wild animals known to frequent trees for habitat or forage. There is some risk associated with standing under a tree and, likewise, there is risk associated with parking one's vehicle or camper beneath any tree.

There is no evidence in the record from which the Court can determine that merely viewing a tree or group of trees can impart actual or constructive knowledge to the agents of Respondent that a limb or limbs or debris of any kind could or might fall from the tree injuring persons or property beneath. In order to allow Claimant an award in this case, this Court must assume that Respondent's agents can reasonably predict from a visual examination of the trees in and around the camping areas that a particular tree or group of trees constitute a hazard to those using the area. Both from the record in this case, and from the common experience of mankind, the inclusion of such a duty within the parameters of the State's duty to use reasonable care to protect the persons and property of members of the public making use of State recreational camping facilities would surely place a heavy burden on the State. Campers using camping pads or areas in the vicinity of trees must be said to assume some risk created by the obvious proximity of trees to the campsite. The ways of Mother Nature are diverse and unpredictable. The State cannot be made an insurer against damage caused when a single limb from a single tree happens, through the process of decay or natural pruning, to have chosen to fall to the ground. While this

was an unfortunate incident and we are not unsympathetic toward the Claimant, based on the evidence we are constrained to deny this claim.

For the foregoing reasons, it is hereby ordered that the Claimant's claim is denied.