(No. 90-CC-0251–

GLENN M. BAHL, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed April 25, 1997.*

HOHLT, HOUSE, DE MOSS & JOHNSON, for Claimant.

JIM RYAN, Attorney General (GREGORY T. RIDDLE, Assistant Attorney General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

Claimant, Glenn M. Bahl, filed his complaint sounding in negligence and seeking damages of $66,256.03 in this court on August 23, 1989. This is a tort claim against the Respondent, State of Illinois, for personal injuries for when Claimant allegedly slipped and fell in a rut or hole in a field at the Du Quoin State Fair on August 29, 1987. The Respondent has denied the material allegations of the complaint and has affirmatively alleged that the Claimant's injuries were caused by the negligence of the Claimant.

At trial, Claimant testified that at the time of the accident he was a track foreman for the Union Pacific Railroad and was 47 years of age. Claimant was in attendance as a member of the general public at the Du Quoin State Fair to watch a concert. After attending the concert, the Claimant was on his way back to his car which was parked in the parking lot southeast of the State Fair grandstands. Claimant was following a path that a large number of people were taking. The pathway was "just a field" that everybody was using to get to the parking lot. Claimant stated: "As I was walking down the path, I don't know what happened. I just—all I heard was a pow and I slipped and I was on the ground just bip bip." Claimant testified that it had not rained the day of his fall, but there was water in the hole in which he fell. The area where he fell was right off of the midway which was lit up but it "was dim through this field, but you could see." The hole was 4 to 6 inches deep and was entirely filled with water. The Claimant was taken to a local hospital and then by ambulance to Belleville Memorial Hospital where he was examined by Dr. Hurd. Two and one-half days later Claimant underwent surgery to repair a broken ankle. Claimant was discharged from the hospital three days later. Claimant was in a cast for nine weeks and he was off work approximately 13 weeks. Claimant's medical bills totaled $6,956.03.

Roger Knapp testified on behalf of Claimant. Mr. Knapp was a concessionaire and for many years had a concession trailer at the Du Quoin State Fair. On August 29, 1987, Mr. Knapp observed the Claimant on the ground after the accident. Mr. Knapp and his wife were going to their car along a common pathway that had been used for years. He further observed that the ground near where Claimant fell was "really rough." Mr. Knapp testified that Claimant's foot was lying in the hole. Mr. Knapp

described the hole as being grassy with no dirt around the hole. The witness also stated that the hole was "maybe 18 inches by 2 foot or maybe it was, you know, 24 by 24, something like that" and it looked to be 4 to 5 inches deep. The hole did not appear to have been dug. There were tire tracks around the area. The location was the southwest corner of the carnival. Trucks that are quite heavy set heavy carnival rides down in this location. Also mobile homes are parked in the area. There were no state workers prohibiting individuals from utilizing the field and there were no barricades or posted restrictions. The area was commonly used by the general public as a means of ingress and egress to and from the fairgrounds. The area where the Claimant fell was not a parking lot but was the southwest corner of the midway. There was a parking lot across the street on the fairgrounds. The parking lot and the walkways are grassy. The hole was not obvious.

Mr. Knapp does not know how the Claimant fell as he did not observe the actual fall. Mr. Knapp testified that there are holes in this area every year but he could not testify as to how long the particular hole in question had been there. Mr. Knapp also testified that there were many state workers in the area.

Claimant testified that he had "maybe a beer or two" while he was at the fairgrounds.

Claimant was off work due to his injuries approximately 13 weeks. In addition to the medical costs, Claimant spent $68 on special shoes. Claimant testified that it was painful for him to be on his feet at work and that his ankle still bothers him in the spring when it is damp and the weather changes. At the time of the trial, Claimant continued to take Tylenol in the morning and evening and can no longer walk 18 holes of golf and enjoy himself.

During 1987, Claimant earned $11,000 in income for 16 weeks of employment or an average of approximately $695 per week gross. He lost 13 weeks of employment due to the injury. Claimant received $1,172 from the Railroad Unemployment and Sickness Board which must be repaid from any award and Union Supplement Pay of $2,500. Claimant testified that the $2,500 must also be reimbursed. Claimant's health insurer must also be reimbursed to the extent of Claimant's recovery. Claimant testified that the injury had slowed him down and on damp days or cold winter days his ankle bothers him. On cross-examination, Claimant testified that the $2,500 payment he received from the Railroad Retirement Board was in connection with his being unemployed during 1987 for six months. This testimony contradicted his earlier testimony on direct examination and the contradiction was not explained.

### The Law

The State owes a duty of care to the users of its parks to reasonably maintain the premises. (*State Farm Mutual Automobile Insurance Co. v. State* (1992), 44 Ill. Ct. Cl. 265.) The State is not an insurer of the safety of persons who visit its parks. (*Heimann v. State* (1977), 32 Ill. Ct. Cl. 111.) In order for a Claimant to recover upon a theory of negligence, he must prove by a preponderance of the evidence that the State has breached its duty of reasonable care, that the breach was a proximate cause of the Claimant's injuries, and that the Claimant was damaged as a result of the negligence. The Claimant must also establish that the State had either actual or constructive notice of an alleged defect or dangerous condition before recovery is allowed. (*Dunbar v. State* (1992), 45 Ill. Ct. Cl. 175.) Invitees to State parks assume the normal and obvious risks attendant to the use of the premises. (*Gower v. State* (1994), 46 Ill. Ct. Cl. 434.) Claimant voluntarily walked

through a grassy area used by heavy trucks and mobile homes. The area was not significantly lighted. This was not a walkway designed by Respondent but an area routinely used by fairgoers as a means to enter and leave the park. Claimant assumes a risk in entering this area after imbibing some alcohol at night. More importantly, Claimant has failed to present any evidence to establish that the State had actual or constructive notice of this alleged defect. To create a duty for the State to seek out every four to six inch depression in state parks where invitees may walk even outside of walkways would be to make the State an insurer of the safety of all those who use its parks. The case law is consistent that the State has no such burden:

It is the burden of the Claimant to prove actual or constructive notice of this alleged dangerous or defective condition to prove the State's negligence. The record is devoid of such evidence. The general assertion that there may be holes in some area over time does not create constructive notice of the hole in which Claimant fell. Having failed to meet his burden of proof, we are constrained to deny this claim.

For the foregoing reasons, it is the order of the court that Claimant's claim be and hereby is denied.